UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SUE M. BOHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 05-11533-RWZ |
| v. | ) | |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | |
| the U.S. Department of Health | ) | |
| and Human Services; and HARVARD | ) | |
| PILGRIM HEALTH CARE, | ) | |
| | ) | |
| Defendants. | ) | |

**FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
FOR ORDER AFFIRMING THE ADMINISTRATIVE DECISION**

**Statement of the Case**

This is an action under 42 U.S.C. § 1395ff for "judicial review of the Secretary's

final decision after [a] hearing", as provided in 42 U.S.C. § 405(g).  Following a hearing,

the Secretary of the Department of Health and Human Services ("the Secretary") issued a

decision in which he determined that Harvard Pilgrim Health Care ("HPHC"), a Medicare-

approved health maintenance organization ("HMO"), was not obligated to pay for certain

skilled nursing facility services provided to plaintiff.  Section 405(g) authorizes the Court

"to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying

or reversing the decision of the Secretary, with or without remanding the case for a

rehearing," and further provides that the "findings of the Secretary as to any fact, if

supported by substantial evidence, shall be conclusive."[1]

> No findings of fact or decision of the Commissioner. . ., shall
> be reviewed by any person, tribunal, or government agency
> except as herein provided.  No action against the United
> States, the Commissioner of Social Security, or an officer or
> employee thereof, shall be brought under section 1331 or 1346
> of Title 28 to recover on any claim arising under this
> subchapter.

42 U.S.C. § 405(h).[2]

## The Applicable Law

A national program of health insurance for the aged and disabled, Medicare

consists of two basic parts.  Part A of Medicare, 42 U.S.C. § 1395c et seq., provides for

the payment of inpatient hospital and related post-hospital benefits on behalf of eligible

---

[1] Section 405(h) is made applicable to the Medicare program by 42 U.S.C. § 1395ii.

[2] Plaintiff's claim that the Court has jurisdiction over this action under the federal question statute (Complaint, ¶ 4) is expressly defeated by section 405(h); Heckler v. Ringer, 466 U.S. 602 (1984); Rhode Island Hospital v. Califano, 585 F.2d 1153, 1157 (1st Cir. 1978).  Section 405(h) also precludes actions for "breach of contract, detrimental reliance, and tortious interference" (as plaintiff characterizes her action in the Complaint, at ¶ 5), since it precludes claims for consequential or punitive damages arising under the Medicare program.  See Livingston Care Center, Inc. v. United States, 934 F.2d 719, 722 (6th Cir. 1991); Bodimetric Health Services, Inc. v. Aetna Life & Casualty, 903 F.2d 480, 487 (7th Cir. 1990)("[a] party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits"); Marin v. Health Care Financing Administration, 769 F.2d 590, 592 (9th Cir. 1985).  See also Schweiker v. Chilicky, 487 U.S. 412 (1988) (barring consequential damages for hardships resulting from an allegedly unconstitutional deprivation of Social Security benefits).

individuals.  Part B of Medicare, 42 U.S.C. § 1395j et seq., establishes a voluntary

supplemental insurance program intended for the payment of physicians' and other health

services.

A Medicare beneficiary may elect to receive his or her benefits from an HMO,

rather than through Medicare's traditional "fee-for-service" program.  42 U.S.C.

§ 1395mm(d); 42 C.F.R. § 417.420(a).  While an HMO may generally determine the

network of providers from whom its enrollees must obtain services, the HMO is required

to provide its Medicare enrollees with the same range of services that is available under

fee-for-service Medicare.  42 U.S.C. § 1395mm(c)(2)(A); 42 C.F.R. § 422.101.

An HMO is required to establish and maintain procedures for appealing

"organization determinations".  42 C.F.R. § 417.604(a)(1).  An organization determination

includes a determination by an HMO that relates to any service "furnished by a provider ...

other than the HMO ... that the enrollee believes ... [is] covered under Medicare; and ...

[s]hould have been furnished, arranged for, or reimbursed by the HMO".  42 C.F.R. §

417.606(a)(2).

If an HMO makes an "organization determination" that is unfavorable to the

beneficiary, it must notify the beneficiary in writing of the determination, and inform the

beneficiary of his or her right to a reconsideration.  42 C.F.R. § 417.608.  If the

beneficiary requests a reconsideration, and the HMO can issue a reconsideration that is

fully favorable to the beneficiary, the HMO will issue the determination.  42 C.F.R.

§ 417.620(a).  However, if the HMO determines that the determination should be

affirmed, in whole or in part, the HMO forwards the case file and a written explanation of its decision to the Center for Health Dispute Resolution ("CHDR"), the contractor chosen by the Secretary for deciding such appeals. CHDR will then issue the reconsidered determination. 42 C.F.R. § 417.620(b).

Any party to a reconsidered determination that is dissatisfied with such determination may obtain a hearing before an Administrative Law Judge ("ALJ"). 42 C.F.R. § 417.630. The ALJ's decision may be appealed to the Medicare Appeals Council, 42 C.F.R. § 417.634, and ultimately to Federal district court, pursuant to 42 U.S.C. § 405(g). 42 U.S.C. § 1395ff(b); 42 C.F.R. § 417.636(b).

Part A of Medicare provides coverage for up to 100 days of post-hospital extended care services provided by a skilled nursing facility during a spell of illness. 42 U.S.C. §§ 1395d(a)(2)(A) and 1395x(h). To qualify for such benefits, the beneficiary must "require skilled nursing or skilled rehabilitation services, or both, on a daily basis." 42 C.F.R. § 409.31(b). Moreover, the "daily skilled services must be ones that, as a practical matter, can only be provided in a [skilled nursing facility], on an inpatient basis." Id. A service will be considered skilled if it is "so inherently complex that it can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a). A service that is not medically reasonable and necessary, or which is merely "custodial," is expressly excluded from coverage. 42 U.S.C. § 1395y(a)(1),(9).

Daily skilled care is skilled care that is provided seven days a week, except that, in

facilities where skilled rehabilitation services are not available seven days a week, such services may be provided five days a week and still qualify as daily care.  42 C.F.R. § 409.34(a).

The Secretary's regulations include detailed examples of services that qualify as skilled nursing or rehabilitation services.  42 C.F.R. § 409.33.  The regulations also provide examples of nonskilled "personal care services", such as the administration of routine oral medications, assistance in basic activities of daily living, and the general supervision of routine exercises.  42 C.F.R. § 409.33(d)(13).

### Statement of Facts and Prior Administrative Proceedings

On December 22, 2002, plaintiff, aged 85, was admitted to the Lahey Clinic for an evaluation following a series of falls in her home (A.R. 66).  Her past medical history included atrial flutter/fibrillation, and status post bilateral breast cancer.  Plaintiff was diagnosed with a gait disturbance and, on December 24, 2002, she was transferred to Aberjona Nursing Center ("Aberjona"), a Medicare-certified skilled nursing facility, for a period of short-term rehabilitation (A.R. 66-67, 324).  Plaintiff's attending physician, Robert Liberman, M.D., ordered a program of skilled rehabilitation services consisting of occupational and physical therapy six times a week, for two weeks, for gait and stair training, patient/caregiver education, and discharge planning (A.R. 77, 90-91).

Plaintiff received physical and occupational therapy six times a week from December 24 to January 24, 2003 (A.R. 62, 287).  While she initially made "slow steady

progress" with the therapy, she soon began to show signs of fatigue, decreased cognition with short-term memory deficits, and poor carryover requiring repetition and verbal cueing (A.R. 62, 257, 270, 276, 288, 297, 305). In a progress note dated January 9, 2003, a Nurse Practitioner noted that plaintiff spent most of the day in bed, and that she was poorly motivated (A.R. 309, 517). On January 10, the Nurse Practitioner noted that she had discussed plaintiff's progress with her physical and occupational therapists, and that the two therapists believed that she would never be able to live at home independently, and that she would require 24-hour care (A.R. 308, 517).

On January 17, Dr. Liberman continued plaintiff's therapy program until January 22, and on January 21, he continued the program again until January 23 (A.R. 87). On January 21, Dr. Liberman noted that the "skilled rehab portion of her care" had been terminated "per discussion" with HPHC (A.R. 92).

On January 23, the Nurse Practitioner noted that plaintiff had been "discouraged she is not getting any stronger", and that she was "not able to even get out of bed by herself" (A.R. 300). The Nurse Practitioner further noted that plaintiff's rehabilitation potential had "maxed out" and that she had not made "any gains" (A.R. 300). On January 24, Dr. Liberman ordered another day of therapy, "as part of maintenance level of care," but then discontinued further therapy (A.R. 86).

On January 21, HPHC notified plaintiff in writing that her nursing care facility stay would not be covered by Medicare as of January 24 (A.R. 15). However, plaintiff elected to stay at the facility until April 8, 2003 (A.R. 248). Meanwhile, she appealed HPHC's

cut-off date and coverage denial (A.R. 42).  On April 17, 2003, HPHC notified plaintiff

that it would provide coverage for her stay at Aberjona through January 24, 2003, but not

thereafter (A.R. 41).  HPHC further stated that it had forwarded plaintiff's case to CHDR

for a reconsideration (A.R. 41).  On April 29, CHDR upheld HPHC's denial of coverage

for plaintiff's stay at Aberjona after January 24 (A.R. 125).

Plaintiff then requested an administrative hearing on the coverage denial.  The

Administrative Law Judge assigned to the appeal held a hearing in the case on March 4,

2004 (A.R. 492).  On August 23, 2004, the ALJ issued an opinion.  She determined that

plaintiff's Medicare coverage provided for up to 100 days per benefit period when daily

skilled nursing or rehabilitative services are required (A.R. 11).  She determined that on

January 23, 2003, plaintiff's medical providers determined that plaintiff was no longer

making gains from skilled rehabilitative services, and that on January 24, 2003, plaintiff's

physician ordered plaintiff to be discharged from Aberjona (A.R. 11).  Three individuals

testified at the hearing: Robert A. Bohlin, plaintiff's son; Gerald Winkler, M.D., a medical

consultant retained by the ALJ; and Harold Forbes, M.D., HPHC's Associate Medical

Director.  Based on the testimony, the ALJ determined that, during the period from

January 25 to April 8, 2003, plaintiff did not require daily treatment of a skilled nature that

could only be provided in a skilled nursing facility on an inpatient basis, and that plaintiff

"knew that the services she was to receive on and after January 24, 2003, would not be

covered by Medicare" (A.R. 11).  Plaintiff requested an Appeals Council review of the

ALJ's decision (A.R. 3).  On May 16, 2005, the Medicare Appeals Council determined

that there was no basis for granting plaintiff's request for review (A.R. 1-2). The ALJ's

decision then became final and subject to judicial review.

## ARGUMENT

### THE ALJ'S DECISION THAT PLAINTIFF DID NOT REQUIRE DAILY SKILLED CARE AFTER JANUARY 24, 2003, IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

In reviewing a decision by the Secretary involving a claim for Medicare benefits,

the Court does not have the authority to decide the case de novo. The scope of review is

limited to determining whether the Secretary's decision is supported by "substantial

evidence." Hurley v. Bowen, 857 F.2d 907, 912 (2d Cir. 1988); Friedman v. Secretary of

Health and Human Services, 819 F.2d 42, 44 (2d Cir. 1987). In applying the substantial

evidence test, the Court "must ... uphold the Secretary's finding 'if a reasonable mind,

reviewing the evidence in the record as a whole, could accept it as adequate to support his

conclusion.'" Id., quoting Rodriguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981).

In this case, the ALJ determined that plaintiff did not require and receive daily

skilled care after January 24, 2003, and, consequently, that her stay at Aberjona Nursing

Center after that date was not covered by Medicare. Because this determination is

supported by substantial evidence, it should be upheld.

The ALJ's determination that plaintiff did not require and receive daily skilled care

after January 24, 2003, is supported by the testimony of Gerald Winkler, M.D., the ALJ's

medical consultant. During the hearing, Dr. Winkler noted that, at the time of plaintiff's

admission to Aberjona, the plan of care established for plaintiff was to "give physical

therapy to see if she could be brought to the point where she could walk independently and

resume independent living" (A.R. 517). However, citing progress notes written by the

Nurse Practitioner on January 9 and 10 (A.R. 308-309), Dr. Winkler noted that, as early as

January 9, plaintiff's care team had raised questions about whether this goal was realistic

(A.R. 517). Referring to medical notes of January 23, indicating that plaintiff had become

"discouraged [about] not getting any stronger," Dr. Winkler noted that plaintiff's attending

physician decided to discontinue her program of daily skilled therapy as of January 25,

"based on the determination by the physical therapist and occupational therapist that the

patient was not making further progress." Dr. Winkler characterized the discontinuance of

plaintiff's therapy program as of January 25 as the "correct decision," adding that the

futility of the program had been "suspected at least as early as January 9" (A.R. 518).

　　　　Further support for the ALJ's decision is provided by the testimony of Dr. Harold

Forbes, HPHC's Associate Medical Director (A.R. 509). Dr. Forbes testified that he had

spoken with plaintiff's attending physician, on January 21, 2003 (A.R. 509-510). Dr.

Forbes stated that it had been his understanding at that time, which he had confirmed by a

subsequent review of plaintiff's nursing home records, that, by January 21, "she was no

longer making progress in her skilled therapy," that "she had reached a plateau," and that

"additional therapy would not likely provide her with any substantive gains in a

reasonable amount of time" (A.R. 510). Dr. Forbes also noted that plaintiff was medically

stable, and that she had not been receiving "any active medical treatment, other than

chronic maintenance medications." Dr. Forbes added that plaintiff "was not receiving any medical care that would require in-patient services" and, therefore, that "she did not meet the requirement for skilled nursing home care" (A.R. 510-511).

During the period from March 1 to April 1, 2003, plaintiff received some physical and occupational services at Aberjona Nursing Center. However, these services were never provided more than three times a week (A.R. 184, 186, 189-190, 277-279, 511-512, 519-522). Thus, the services provided after March 1 were not provided on a "daily" basis, as that term is defined by the Secretary's regulations. 42 C.F.R. § 409.34(a).[3]

## CONCLUSION

For the foregoing reasons, the ALJ's decision that plaintiff did not require and receive daily skilled therapy after January 24, 2003, is supported by substantial evidence, and is not arbitrary and capricious or contrary to law. Accordingly, the ALJ's decision is required to be affirmed.

Respectfully submitted,

MICHAEL O. LEAVITT,
Secretary of Health and Human Services

By his Attorney:

MICHAEL J. SULLIVAN
United States Attorney

---

[3] Medicare paid for these individual therapy sessions, at the payment rate for outpatient services (A.R. 511-512).

By:     /s/Anita Johnson
        ANITA JOHNSON
        Assistant U.S. Attorney
        John Joseph Moakley U.S. Courthouse
        1 Courthouse Way - Suite 9200
        Boston, MA 02210
        (617) 748-3266

Of Counsel:

PAULA M. STANNARD
Acting General Counsel

NANCY S. NEMON
Chief Counsel, Region I

CLIFFORD M. PIERCE
Assistant Regional Counsel
Department of  Health and Human Services
J.F.K. Bldg., Rm. 2250
Boston, MA 02203
(617) 565-2379

Dated:  October 31, 2005