UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS.

```
FILED
IN CLERK'S OFFICE

2005 DEC -8 P 3: 00
```

SUE M. BOHLIN,                          )
                                        )
        Plaintiff,                      )        Civil Action
                                        )        No. 05-11533-RWZ
    v.                                  )
                                        )
MICHAEL O. LEAVITT, Secretary of        )
the U.S. Department of Health           )
and Human Services; and HARVARD         )
PILGRIM HEALTH CARE,                    )
                                        )
Defendants.                             )
                                        )

PLAINTIFF'S MEMORANDUM
IN RESPONSE TO
FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
FOR ORDER AFFIRMING THE ADMINISTRATIVE DECISION

A number of the statements of facts as put forth in United
States Attorney's motion submitted to the court on October 31,
2005 are not accurate or tend to give a distorted picture of an
overall situation due to omission of related facts.

Beginning at the very bottom of page 5 of United States
Attorney's motion:

United States Attorney states "While she [Plaintiff] initially
made 'slow steady progress' with the therapy, she soon began to
show signs of fatigue, decreased cognition..."

This conveys the idea that the Plaintiff's condition, after some
initial progress, began to deteriorate without indication of any
subsequent improvement. This makes it appear that Plaintiff's
condition exhibited a distinct peak or plateau. This picture of the
trend taken regarding the condition of the Plaintiff is false.

This false trending of the plaintiff's condition is similar to
the picture that Harvard Pilgrim Health Care (HPHC) has tried to
portray.

(1)

Such a picture best serves Harvard Pilgrim's purpose. With such a picture, Harvard Pilgrim has claimed the Plaintiff had "plateaued". After that "plateau", Harvard Pilgrim could claim there was a fairly steady downward trend, where the Plaintiff was not improving, therefore, if Plaintiff was not improving, providing Plaintiff with coverage for additional physical therapy was a waste of effort, and therefore, Plaintiff's benefits should be terminated. HPHC argued at the ALJ Hearing that Plaintiff "had reached a plateau".

For the 30 days that Plaintiff underwent "skilled care" before termination of her benefits, her day-to-day condition was erratic. Some days she showed no improvement, some days she did. She was always lethargic and fatiqued from the first day she was admitted to the Aberjona Nursing Home.

There was no clear trend downward during the third and fourth week of Plaintiff's rehab. In fact during the third week, just as the HPHC case manager was making the decision to terminate benefits, Plaintiff showed definite improvment...OF WHICH THE CASE MANAGER WAS AWARE.

Quoting from the Harvard Pilgrim case manager's own notes:

ref page 1 attached
Jan  7, 2003  "MEMBER HAS MADE MINIMAL PROGRESS"
Jan  7, 2003  "Will watch for progress following psych intervention"
Jan  7, 2003  "Family meeting 1/14. If no progress at that point will
              discuss TOB (Termination of Benefits) with MD"

ref page 2 attached
Jan 13, 2003  "MEMBER HAS MADE SOME GAINS OVER PAST WEEK"
Jan 13, 2003  "Member was totally independent prior to this admit"
Jan 13, 2003  "Goal remains for return to independent living"

ref page 3 attached
On Friday, January 17, 2003, The HPHC case manager claims she received a call from the nursing facility telling her that Plaintiff was "unlikely" to make more gains. The case manager notes that the doctor was not available to discuss. At this point the case manager had decided to terminate Plaintiff's benefits and she notes she will follow-up with Plaintiff's doctor on Tuesday morning after the Monday holiday. (ref. pg 5 attached, Dr. Forbes notes, benefits terminated on Jan. 17, 2003)

The Aberjona Nursing Home has denied that anyone from that facility called the HPHC case manager at that time.

During this time period the Plaintiff was making
gains, therefore, it is especially peculiar that the case
manager claims she received a call from the facility saying
the Plaintiff was not expected to make any more gains.

For the week of January 14 to January 21,2003, the
PHYSICAL THERAPY PROGRESS NOTES (ref pg 8) indicate
"Patient has made progress this week with all functions"

Here is presented a group of comments that show a broader
time period. These comments and dates indicate that
Plaintiff's condition did not peek in early January then
decline fairly steadily as depicted in the
FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
FOR ORDER AFFIRMING THE ADMINISTRATIVE DECISION

see attached page 6
PHYSICAL THERAPY PROGRESS NOTE  12/24  -  12/31/2002
"Patient has made significant gains"

see attached page 7
PHYSICAL THERAPY PROGRESS NOTE  12/31/2002  -  1/7/2003
"patient has NOT met short term goals this week"

see attached page 8
PHYSICAL THERAPY PROGRESS NOTE   1/14/2003  - 1/21/2003
"Patient has made progress this week with all functions"

see attached page 9
OCCUPATIONAL THERAPY PROGRESS NOTE   1/4/2003 1/10/2003
"Patient has been making slow steady progress"

see attached page 10
OCCUPATIONAL THERAPY PROGRESS NOTE   1/10/2003 1/17/2003
"Patient making slow progress in all areas"

(3)

ref page 4 attached:
On Tuesday morning January 21, 2003, the HPHC case manager
called Plaintiff's doctor and said in her notes "telephone call
to Dr. Liberman, HE AGREES THAT MEMBER IS UNLIKELY TO MAKE
FURTHER GAINS WITH REHAB". It is clear that the HPHC case manager
initiated this call and placed the concept of terminating
Plaintiff's benefits before Plaintiff's doctor. The case manager
says that she got the doctor to agree WITH HER, i.e. the doctor
did not initiate the concept of terminating benefits.

However, it appears that the Plaintiff's doctor was still
somewhat reluctant, therefore, the case manager notes "telephone
call to Dr. Forbes" (Dr. Forbes was Associate Medical Director
at Harvard Pilgrim). "He will speak with Dr. Liberman".

Later that day, Dr. Liberman writes in his notes that
Plaintiff's benefits were terminated "per telephone call with
Dr. Forbes".

---

On page 6 of United States Attorney's motion:
United States Attorney states: "In a progress note dated January
9, 2003, a Nurse Practitioner noted that the plaintiff spent most
of the time in bed, and that she was poorly motivated". That is
an accurate description of the plaintiff's situation. However,
not only for the January 9 time frame, but that was the situation
since the first days the plaintiff was admitted to the hospital
and then nursing facility.

In fact, the plaintiff's fatigue and apathy, after her sudden and
devastating inabilty to walk, is a significant reason why HPHC's
decision to terminate the plaintiff's benefits, should be
considered a premature decision on HPHC's part.

The attached pages 11, 12, 13, 14 are a list of pertinent nurses
comments regarding the Plaintiff's lethargy/apathy. Actual
documents not included because of volume, however, they are
immediately available upon request by the court.

HPHC had no way of knowing if the plaintiff's progress would
improve or not after these mental obstacles were overcome. (The
plaintiff had, literally just a few days earlier, a psychiatric
consult and was prescribed antidepressants...which obviously, at
this time, had not yet any time to take effect.

HPHC made that decision after only (exactly) 24 days of the
plaintiff's entry to the nursing facility. The HPHC Benefits
Handbook (ref pg 15) described as a legal document, i.e.
contract, clearly states that HPHC will cover up to 100 days
(assuming skilled care was necessary...and it was necessary).

(4)

ON PAGE 6 OF UNITED STATES ATTORNEY'S MOTION:

United States Attorney states: "On January 10, the Nurse
Practitioner noted that she had discussed plaintiff's progress
with her physical and occupational therapists, and that the two
therapists believed that she would never be able to live at home
independently..."

Whether or not the plaintiff could ever return to independent
living was not the only goal. The main goal was to have the
Plaintiff walk again, either as she had been doing just prior to
being stricken, or at least to be able to move with an assistive
walker device or cane.

Also, the above describes the "belief" of the therapists at this
time, only 17 days into the plaintiff's therapy treatments.
Those therapy treatments were 50 minutes or less per day...5 & 6
(or less) days per week...while the plaintiff was in a very
lethargic and apathetic condition. Because of the plaintiff's
lethargy, those therapy sessions could only be described as
"mild". Plaintiff's son witnessed a number of them.

In addition, Plaintiff was suffering from untreated/undiagnosed
depression which was soon to be diagnosed by a psychiatrist (Dr.
Skwerer) on or about January 14, 2003.  Plaintiff began
treatment with anti-depressants on January 15 or 16. Normally it
is a matter of weeks before antidepessants take effect.

As stated in a health care bulletin (attached pg 16) "depression
can make recovery from physical problems more difficult".


Medicare regulations provide that "skilled care" is deemed
necessary in cases where the goal is simply to prevent
further deterioration of a patients condition or just to
maintain a certain level.

42 CFR §409.32(c)
"The restoration potential of a patient is not the deciding
factor in determining whether skilled services are needed. Even
if full recovery or medical improvement is not possible, a
patient may need skilled services to prevent further
deterioration or preserve current capabilities".

ON PAGE 6 OF UNITED STATES ATTORNEY'S MOTION:

United States Attorney states "The Nurse Practitioner further
noted that plaintiff's rehabilitation potential had 'maxed
out'..."

This statement of what the Nurse Practitioner wrote is in error.
The word "potential" is not present in what the Nurse
Practitioner wrote. The actual document is attached as page 17.
The word "potential" should not even be implied in this instance
because it can be construed that the Nurse Practitioner was
referring to the fact that the Plaintiff's insurance benefits
had just been terminated, i.e. the coverage had maxed out not
her potential.

But regardless of what the Nurse Practitioner meant, the word
"potential" is not present and even if it were present it
should not be a factor because,

42 CFR §409.32(c) says:
"The restoration potential of a patient is not the deciding
factor in determining whether skilled services are needed".

---

ON PAGE 6 OF UNITED STATES ATTORNEY'S MOTION:

United States Attorney states "On January 21, Dr. Liberman noted
that the 'skilled rehab portion of her care' had been terminated
'per discussion' with HPHC.

more exactly what the doctor noted was:
Plaintiff's doctor noted "[skilled] care had been terminated per
discussion with Dr. Forbes".

WHAT IS NOT SAID IS THAT:

It was not until January 21 that Dr. Liberman knew that his
patient, the Plaintiff, was to have her benefits terminated by
Harvard Pilgrim.

The Plaintiff's doctor was first called by the HPHC case manager
who had already made the decision to terminate the Plaintiff's
benefits on January 17, 2003.

Immediately after the HPHC case manager spoke to Plaintiff's
doctor, the case manager called Dr. Harold Forbes, Associate
Medical Director of HPHC, who in turn, called Plaintiff's
doctor. (ref page 4)

As said in Plaintiff's complaint paragraph 17: It appears the
Plaintiff's doctor was reluctant to agree with the decision
told to him by the HPHC case manager. Thus, the case manager
had the Associate Medical Director of Harvard Pilgrim call the
Plaintiff's doctor apparently to coerce Plaintiff's doctor
into agreement regarding termination of Plaintiff's benefits.
(see termination of benefits letter attached as page 18)

The appearance of coercion at this time is based on a number of
facts. These facts include the numerous physician's orders that
followed within the next several weeks indicating Plaintiff's
doctor was very concerned about Plaintiff's condition and would
not have likely agreed to termination of Plaintiff's benefits
without pressure (the Jan 21 phone call) from Dr. Forbes, the
Associate Medical Director at Harvard Pilgrim. Also a factor
might be the existing reimbursement agreement (see page 19)
between Harvard Pilgrim and its care providers. Although HPHC
may not publicly admit any monetary incentives exist for its care
providers...such does exist as shown in the attached HPHC
document.

---

As United States Attorney stated on page 6 of Oct 31st
motion:

On January 21, Plaintiff's doctor continued the Plaintiff's
physical therapy until January 23. And on January 24,
Plaintiff's doctor ordered another day of therapy for the same
day, January 24.

WHAT UNITED STATES ATTORNEY DOES NOT STATE:

On the same day, January 24, 2003, Plaintiff's doctor ordered
"Restorative Therapy" for 5 times per week (considered DAILY)
for the next 2 weeks. (ref page 20)

The indication is clear that Plaintiff's doctor knew that
Plaintiff needed or required therapy, therefore, the indication
is that Plaintiff's doctor was not in full agreement with the
decision of HPHC to terminate benefits.

A review of the goals to be accomplished by this "Restorative
Therapy" and a review of what it entailed makes it clear that
"restorative therapy" was basically the same as physical therapy
except that because the nomenclature was changed, it was not
considered "skilled" and Harvard Pilgrim avoided paying the cost
of the Nursing Home room and board.

(7)

AGAIN WHAT UNITED STATES ATTORNEY DOES NOT STATE:

On January 30, 2003, Plaintiff's doctor ordered a "comprehensive metabolic profile"  (ref page 20)

On February 1, 2003, Plaintiff's doctor ordered a "consult" with the Neurology Department at the Lahey Clinic. (ref page 22)

Also on February 1, 2003, Plaintiff's doctor asked (ordered) a second consult or "re-assess" with the psychiatrist. (ref page 22)

Also during the first week in February 2003, there were a number of doctor's orders for new medicines and close evaluation of Plaintiff's diet and weight which had been dropping rapidly for several weeks. (ref pages 21,23,24,25)

Looking at all of the above, it is apparent that Plaintiff, as of January 21, 2003, the date of the Termination-of-Benefits letter, had not "reached a state of stability" as HPHC told the Plaintiff in the termination letter (ref pag 18). HPHC also argued that Plaintiff had reached a "state of stability" at the ALJ hearing.

It is apparent that Plaintiff's doctor was quite concerned for Plaintiff's condition. This is more support that Plaintiff's doctor must have only RELUCTANTLY agreed with HPHC on January 21, when they discussed Plaintiff's termination of benefits.

On February 28, 2005, Plaintiff was seen by a neurologist at the Lahey Clinic. The neurologist spoke with Plaintiff's son and said she "STRONGLY" recommends physical therapy. In her report, the neurologist wrote "STRONGLY" suggest physical therapy. (ref page 27 attached)

On page 26, a form the neurologist filled out, physical therapy (PT) is noted at least 4 times.

Plaintiff underwent a CAT scan on March 5, 2003 and that examination was noted as NORMAL for the patient's age. (ref pg 28)

The Plaintiff met again with the neurologist in early April 2003 and again the neurologist recommended physical therapy noting that the Plaintiff's condition had IMPROVED from that of early March.

ALSO NOT STATED BY UNITED STATES ATTORNEY:

ref attached page 24 (bottom of page):
On March 1, 2003 Plaintiff's doctor issued orders for DAILY
skilled care/physical therapy...5 times per week for 2 weeks.

Therefore, WITHIN 5 WEEKS OF PLAINTIFF'S TERMINATION OF BENEFITS
IN LATE JANUARY, PLAINTIFF'S DOCTOR WAS TRYING TO RE-INSTATE A
PROGRAM OF SKILLED CARE FOR PLAINTIFF.

This is very very important because the basis for Plaintiff's
appeal being denied by the Center For Health Dispute Resolution
was "THERE IS NO NOTE IN THE FILE THAT SHE [PLAINTIFF] WAS IN
NEED OF OR RECEIVED SKILLED NURSING ASSESSMENT OR INTERVENTION
ON A DAILY BASIS. CARE NEEDS APPEAR TO HAVE BEEN CUSTODIAL IN
NATURE AS OF 01-25-03" (ref page 29)

Plaintiff's doctor's orders of March 1, 2003 MAKES FALSE the
above basis that CHDR relied upon.

Also, in 2004 the Administrative Law Judge made a decision that
was in agreement with Harvard Pilgrim position. However, under
the Judges's "FINDINGS" it states:  (ref page 30)

1. The Appellant is a member of Harvard Health...
2. Following a hospital stay, the appellant was a patient at...

3. During the period January 24 - April 8, 2003, the Appellant
did not require treatment of a skilled nature which, as a
practical matter, could only be provided in a skilled nursing
facility on an inpatient basis.

4. The appellant knew that the services she was to receive....
-------------------------------------------------------------
Findings 1,2 and 4 are simply statements of common knowledge.

FINDING #3 is the basis for the ALJ decision which
supported the position of Harvard Pilgrim.

FINDING #3 SHOULD NOW BE CONSIDERED TO BE FALSE; because
Plaintiff's doctor submitted orders for treatment of a
skilled nature on March 1, 2003.

THUS, THE ALJ'S DECISION THAT THE PLAINTIFF DID NOT REQUIRE
DAILY SKILLED CARE AFTER JANUARY 24, 2003 CANNOT BE SUPPORTED.
PLAINTIFF'S DOCTOR TRIED TO PROVIDE PLAINTIFF WITH DAILY
SKILLED CARE ON MARCH 1, 2003 BUT WAS DENIED. THE FACT THAT
PLAINTIFF'S DOCTOR DID ORDER DAILY SKILLED DAILY INDICATES HE
CONSIDERED THAT PLAINTIFF REQUIRED DAILY SKILLED CARE.

Plaintiff points out that this key document, the PHYSICIAN'S ORDER of March 1, 2003 was OMITTED from the book of exhibits that Harvard Pilgrim presented at the ALJ Hearing. Thus, it did not receive the attention it deserved. Although Harvard Pilgrim presented numerous PHYSICIANS ORDERS as exhibits, the March 1 document was omitted. Harvard Pilgrim claimed that was done by clerical error. Harvard Pilgrim did mention the existence of the March 1 document with a small footnote.

---

Plaintiff's doctor issued orders for physical therapy and a "PHYSICAL THERAPY EVALUATION" form was written up for physical therapy at a frequency of 5 times per week (DAILY). This paperwork was submitted to HPHC on March 1, 2003 for approval. (ref pages 31, 33, and 34)

On March 4, Harvard Pilgrim responded but only approved physical therapy for 3 times per week. Harvard Pilgrim denied the therapy frequency of 5 times per week (ref page 35). In doing so HPHC avoided the care being called "skilled care" and thus avoided the cost of covering Plaintiff's room and board at the nursing home...and moreover, HPHC would appear to be totally consistent with their refusal in January to allow any further "skilled care" for the Plaintiff.

Plaintiff would like to point out that to the best of Plaintiff's knowledge, making Plaintiff's doctor seek pre-approval for physical therapy was not usually necessary.

CONCLUSION

The March 2003 skilled care request by Plaintiff's doctor was
denied by Harvard Pilgrim. This denial was put forth so that
Harvard Pilgrim could avoid paying room and board for
Plaintiff's nursing home care and also so that Harvard Pilgrim
appeared consistent with their decision to terminate skilled
care for Plaintiff in January 2003.

The termination of Plaintiff benefits that Harvard Pilgrim
carried out in January 2003 was done prematurely and before
Plaintiff was in a reasonable condition mentally to better
benefit from physical therapy. There was no substantial reason
for HPHC to claim Plaintiff would not ever improve or that
skilled care would not at least help maintain her existing
condition as Medicare allows. Plaintiff was not seeking unlimited
care but merely, if required, the 100 days that the Harvard
Pilgrim contract says they will cover. (ref page 15)

The decision to terminate Plaintiff benefits that Harvard Pilgrim
made in January 2003 was made before discussion with Plaintiff's
doctor. This is adverse to the manner of operation per the HPHC
Benefits Handbook. (ref page 36).

When HPHC finally did discuss termination of benefits with
Plaintiff's doctor the decision had already been made. The
Plaintiff's doctor was reluctant to accept the idea as evidenced
by the series of telephone calls that Harvard Pilgrim placed to
the doctor - after HPHC made their decision and by the level of
the HPHC delegate that last spoke to the doctor before getting
doctor's reluctant agreement.

The Harvard Pilgrim case manager may have knowingly entered false
information into the record when on January 17, 2003, at 4:30pm
on a Friday afternoon before a long holiday weekend, she claimed
she received a call from the [nursing] facility telling her that
Plaintiff was unlikely to improve (ref page 4).

(11)

CONCLUSION (cont'd)

Regarding the:
FEDERAL DEFENDANT'S CONCLUSION
in the
FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
FOR ORDER AFFIRMING THE ADMINISTRATIVE DECISION

It says:

"...the ALJ's decision that Plaintiff did not require and receive daily skilled therapy after January 24, 2003, is supported by substantial evidence...Accordingly, the ALJ's decision is required to be affirmed"

That statement is FALSE. The Plaintiff DID REQUIRE daily skilled therapy after January 24, 2003. The fact that Plaintiff required such care is arguable based on earlier medical records. But here is substantial evidence that Plaintiff's doctor, on March 1, 2003, requested DAILY SKILLED CARE - PHYSICAL THERAPY 5 TIMES PER WEEK. Therefore, Plaintiff's doctor was effectively saying the Plaintiff REQUIRED SKILLED CARE.

The Plaintiff did not receive that care because Harvard Pilgrim denied it.  For that denial (March 2003) and the earlier denial (January 2003) Plaintiff seeks damages from Harvard Pilgrim.

The fact that Plaintiff did not receive skilled care after January 24, 2003 should not be an issue; not only for the fact that it was HPHC, a defendant in this case, who denied it based on their own interests, but because:

the ALJ FINDING #3 says nothing about "receiving" daily skilled therapy.

THE PERTINENT ALJ FINDING #3 (repeated below) IS FALSE.

3. During the period January 24 - April 8, 2003, the Appellant did not require treatment of a skilled nature which, as a practical matter, could only be provided in a skilled nursing facility on an inpatient basis.

Accordingly the ALJ's decision should not be affirmed.

Respectfully Submitted,

*Sue M. Bohlin*

Sue M. Bohlin
Plaintiff
Fairlawn Nursing Home
265 Lowell Street
Lexington, MA  02420
tel. 781-862-7640
------------------------------
Please direct communications to:
9 Chardon Road
Medford, MA  02155
tel. 781-395-1129

(12)

APR-09-2003 02:51 AM                          9786586118                    P.09

```
MODE:F ACTION:        Case Management Entry Screen   04/09/2003   MAR060KO
  01 Case No.   7522          02 Open Date: 12/23/2002  Screened:
  03 Case Mgr:6573 M.BLEIER,RN    04 Next Contact(BIB): 0 Next Cont:01/07/2003
```

| 05 Member HPF216804-00        Other              PCP  G09592LC     |
| SUE M BOHLIN                   B-PKG  J1          NAVA DANA         |

```
  ACTION:           Case Management Notes Screen            MAR062KO
                   From: _____ to _____

  01  A: MEETS CRITERIA FOR BASIC SKILLED LOC FOR REHAB/MED MGMT.   12/31/2002
  02  P: APPROVE BASIC SKILLED LOC 12/30/02-01/07/03.               12/31/2002
  03  ........................................K.ORBEN,RN/FLOAT NCM... 12/31/2002
  04  ##########################################################   01/10/2003
  05      SNF NOTE FOR 1/7                                         01/10/2003
  06  S- PSYCH EVAL ORDERED. POOR SAFETY AWARENESS. MIN A BED      01/10/2003
  07  MOBILITY. MIN A TRANSFERS. MIN A AND VERBAL CUES TO AMB      01/10/2003
  08  75'. MAX A ADLS. MEMBR HAS MADE MINIMAL PROGRESS. WILL WATCH 01/10/2003
  09  FOR PROGRESS FOLLOWING PSYCH INTERVENTION. FAMILY MEETING    01/10/2003
  10  1/14. IF NO PROGRESS AT THAT POINT WILL DISCUSS TOB WITH     01/10/2003
  11  MD.                                                          01/10/2003
  12  A- MEETS SKILLED LOC FOR REAHB                               01/10/2003
```

Press <CR> to VIEW additional Case Note Lines .....

1

APR-09-2003 02:51 AM                              9786586118                P.07

```
MODE:F ACTION:            Case Management Entry Screen   04/09/2003   MAR060KO
 01 Case No.   7522            02 Open Date: 12/23/2002  Screened:
 03 Case Mgr:6573 M.BLEIER,RN      04 Next Contact(BIB): 0 Next Cont:01/07/2003
```

```
05 Member HPF218804-00      Other            PCP  G09592LC
   SUE M BOHLIN            B-PKG  J1        NAVA DANA
```

```
ACTION:             Case Management Notes Screen              MAR062KO
                    From: _____ to _____
```

| | | |
|---|---|---|
| 01 | P- APPROVE THRU 1/14.  M.BLEIER RN | 01/10/2003 |
| 02 | ############################################### | 01/15/2003 |
| 03 | SNF NOTE FOR 1/13 | 01/15/2003 |
| 04 | S-CTG/MIN A TRANSFERS. CTG TO AMB 100' WITH RW. FULL | 01/15/2003 |
| 05 | WEIGHT BEARING. MAX A LOWER BODY ADLS. MOD A TOILETING. | 01/15/2003 |
| 06 | FAMILY MEETING SCHEDULED FOR TOMORROW. MEMBR HAS MADE SOME | 01/15/2003 |
| 07 | GAINS OVER PAST WEEK. MEMBR WAS TOTALLY IND PRIOR TO THIS | 01/15/2003 |
| 08 | ADMIT. | 01/15/2003 |
| 09 | A- MEETS SKILLED LOC FOR REHAB | 01/15/2003 |
| 10 | P- APPROVE THRU 1/21. GOAL REMAINS FOR RETURN TO IND | 01/15/2003 |
| 11 | LIVING.  M.BLEIER RN | 01/15/2003 |
| 12 | ############################################### | 01/21/2003 |

Press <CR> to VIEW additional Case Note Lines .....

2

APR-09-2003 02:58 AM                                    9786586118                    P.06

```
MODE:F ACTION:           Case Management Entry Screen   04/09/2003   MAR060KO
  01 Case No.   7522          02 Open Date: 12/23/2002  Screened:
  03 Case Mgr:6573 M.BLEIER,RN     04 Next Contact(BIB): 0 Next Cont:01/07/2003
```

```
| 05 Member HPF218804-00     Other        | PCP  G09592LC  |
|    SUE M BOHLIN            B-PKG  J1     | NAVA DANA      |
```

```
| ACTION:             Case Management Notes Screen            | MAR062KO   |
|                     From: _____ to _____           |            |
|                                                            |            |
| 01      SNF NOTE FOR 1/17                                  | 01/21/2003 |
| 02  S- TC FROM FACILITY AT 4:30 PM. REHAB D/CING MEMBR FROM| 01/21/2003 |
| 03  REHAB EFFECTIVE TODAY. ? WHY NOT AWARE ON TUES. NOT    | 01/21/2003 |
| 04  DISCUSSED WITH FAMILY AT MEETING. MEMBR IS NOT IND AND | 01/21/2003 |
| 05  WAS PRIOR TO ADMIT. ? WHY D/CING.RETURN CALL FROM FACILITY | 01/21/2003 |
| 06  REHAB FEELS MEMBR UNLIKELY TO MAKE MORE GAINS. MD NOT  | 01/21/2003 |
| 07  AVAILABLE TO DISCUSS. WILL F/U ON TUES AM AFTER HOLIDAY| 01/21/2003 |
| 08  W/E. REHAB INSTRUCTED TO CONT TO WORK WITH MEMBR UNTIL | 01/21/2003 |
| 09  MD ORDERS TO STOP OR UNTIL TOB.                        | 01/21/2003 |
| 10  A- ? STILL SKILLED                                     | 01/21/2003 |
| 11  P- F/U WITH MD.  M.BLEIER RN                           | 01/21/2003 |
| 12  ##################################################     | 01/22/2003 |
```

Press <CR> to VIEW additional Case Note Lines .....

**3**

APR-09-2003 02:50 AM                    9786586118              P.05

```
MODE:F ACTION:        Case Management Entry Screen   04/09/2003   MAR060KO
  01 Case No.  7522            02 Open Date: 12/23/2002  Screened:
  03 Case Mgr:6573 M.BLEIER,RN    04 Next Contact(BIB): 0 Next Cont:01/07/2003
```

| 05 Member HPF218804-00   Other          PCP  G09592LC |
| SUE M BOHLIN            B-PKG  J1      NAVA DANA |

| ACTION:         Case Management Notes Screen           MAR062KO |
|                 From: _____ to _____ |

| 01 |     SNF NOTE FOR 1/21 | 01/22/2003 |
| 02 | S- TC TO DR. LIBERMAN. HE AGREES THAT MEMBR IS UNLIKELY | 01/22/2003 |
| 03 | TO MAKE FURTHER GAINS WITH REHAB. STABLE MEDICALLY. | 01/22/2003 |
| 04 | TC TO DR. FORBES. HE WILL SPEAK WITH DR. LIBERMAN. LETTER | 01/22/2003 |
| 05 | REQUEST SENT TO MSU AT 1:20PM. | 01/22/2003 |
| 06 | A- NO LONGER SKILLED LOO | 01/22/2003 |
| 07 | P- WILL HAND DELIVER LETTER TO MEMBER WHEN AVAILABLE. | 01/22/2003 |
| 08 | M.BLEIER RN | 01/22/2003 |
| 09 | ############################################### | 01/22/2003 |
| 10 |     SNF NOTE FOR 1/22 | 01/22/2003 |
| 11 | S- HAND DELIVERED LETTER TO MEMBER. DISCUSSED RIGHT TO | 01/22/2003 |
| 12 | APPEAL AND SW AVAILABLITY TO DISCUSS ALT FUNDING. MEMBR | 01/22/2003 |

Press <CR> to VIEW additional Case Note Lines .....

4

04/17/2003                  TRANSACTION PRINTOUT                 09:39 AM
MAR042ZS                  FOR TRANSACTION #SN24419C              PG#  2

TC/ANN SHEEHAN CSM X39118...MEMB VRF....
APRV BASIC LEVEL SNF 12/23 TO 12/30/02...
TRANS # GIVEN....
12/23/2002 12:58 .... D BRITO
APPROVE BASIC SKILLED LOC 12/30/02-01/07/03. SEE CM NOTES.
12/31/2002 11:48 .... K ORBEN,RN
Refer to HCC 01/10/2003 11:47 .... M BLEIER,RN
 Termination of benefits at skilled nursing home level of
care.
This 85 y/o female was admitted to Aberjonna Nursing Center
on 12/24/2002 after a fall and had atrial flutter.  She had
a history of breast cancer and hypertension but her medical
problems are stable.  She was discharged from PT and OT on
01/17/2003. She ambulates and transfers with CG and max
help with ADL's.  She is no longer making progress and has
no skilled services at this time.  She has agreed to stay as
long term care and will be at custodial level of care.   I
spoke with Dr. Liberman 781-641-3205 and he agrees with TOB.
01/21/2003 11:38 .... H FORBES,MD
TERMINATION OF BENEFIT LETTER GENERATED VIA MSU...LETTER
WILL BE FAXED TO PEG BLEIER FOR HAND DELIVERY...
01/21/2003 13:53 .... J RISNER
1/22/03-TERMINATION OF BENEFIT LETTER FAXED TO PEG BLEIER
ON 1/21/03, LETTER DELIVERED AND SIGNATURE OBTAINED ON
1/22/03....W HANSON RN MSU.
01/22/2003 14:13 .... W HANSON, RN
04/16/2003 APPEAL MADE QUESTIONING DECISION TO T.O.B SN BEN
-IFITS AS OF JANUARY23,2003 LAST COVERED DAY. PT HAS HX OF
A FALL AT HOME ON DECEMBER 22,2002 ADMITTED TO LAHEY OBSER-
VATION PH OF BREAST CA ,ATRIAL FIB/FLUTTER,GAIT DISTURBANCE
W/U AT LAHEY WITH HEAD CT NEG.STARTED ON LOPRESSOR AND DETER
MINED WOULD BENEFIT FROM SHORT TERM REHAB. ADM TO ABERJONA
NURASING CENTER DEC 24,2002. GOALS: TO INCREASE STRENGTH, A
ND RETURN TO PREVIOUS LEVEL OF FUNCTION.AT NURSING FACI
LITY
RECEIVED PT AND OT SERVICES UNTIL JAN 24, 2003 WHENI TWAS
JUDGED SHE HAD MET GOALS. OF NOTE A PSYCHIATRIC CONSULT
WAS OBTAINED. IMPRESSION:LIKELY DEMENTIA, DEPRESSION. START-
ED ON WELLBUTRIN AND ARICEPT. TERMINATION OF BENEFIT APPEARE
D APPROPRIATE WITH RETURN TO CUSTODIAL CARE AT CENTER.
THERE IS NO NEW MATERIAL TO WARRANT OVERTURNING ORIGINAL
DECISION TO TERMINATE SKILLED BENEFITS AT THAT TIME EXCEPT
LAST DAY COVERED SHOULD BE JAN.24 NOT JAN 23. APPEAL DENIED.
04/16/2003 15:47 .... F COGLIANO

5

| ame | | First Name | | | ding Physician | | Record Number |
|---|---|---|---|---|---|---|---|
| Bohlin | | Sue | | | Dr Liberman | | 2527 |

## ABERJONA NURSING CENTER
### PHYSICAL THERAPY
### WEEKLY PROGRESS NOTE

Duration: From 12/24 to 12/31/02 .

| | Ind | Sup | Ctg | MinA | Mod A | Max A | Dep | STGs | Assessment |
|---|---|---|---|---|---|---|---|---|---|
| Roll -> R | | | | ✓ | | | | | Pt has made significant gains |
| Roll -> L | | | | ✓ | | | | | requires ↓ assist c̄ mobility, ↑ |
| Sit -> Supine | | | | | | | | S | amb distance. ⒶLE dragging |
| Supine -> Sit | | | ✓ | ✓ | | | | ↓ | @ 75' distance ↓ grip Ⓑ UE on |
| Sitting Balance | | ✓ | | | | | | | RW. ↓ safety awareness bed -> chair |
| W/C Prop | | | | | ✓ | ↓ safety | | | pt cooperative c̄ therapy but |
| W/C Man | | | | | ✓ | ✓ | | | requires consistent VC's. ↓ STM |
| Transfer Type: | stand step c̄ RW | | | | | | | S ≥ RW | |
| Sit -> Stand | | | | ✓ | | | | | Ther ex: |
| Stand -> Sit | | | ✓ | | ✓ | | | | AROM supine 1# x 20 ⒷLEs |
| W/C -> Bed | | | | ✓ | | | | | AROM sit a tt < 30ⒷLEs |
| Bed -> W/C | | | | ✓ | | | | | Stand. x10 reps fatigues quickly. |
| Car | NT | | | | | | | | Ed pt/family/other: |
| Low Seat | | | | | ✓ | | | | safety c̄ txs/RW. |
| Ambulation | | | ✓<>✓ | | | | | | Other: |
| Device WB | FWB / RW | | | | | | | | |
| Distance | 75 x 2 | | | | | | | 150' | |
| Func. Amb. | Fair- c̄ RW | | | | | | | CG ↑↓ | |
| Stand. balance | NT | | | | | | | 3 | |
| Stairs | | | | | | | | | |
| Device / # Stairs | | | | | | | | | |
| Rail | Right ✓ | Left | Both | None | | | | | |

**FAMILY/HOME:**

**PLAN:** Continue skilled PT to ↑ func. status ↓
level of assistance 5/wk x 1 week

Lynda Byrne PT    12/31/02 .
Therapist Signature/Date

6

ame **BOHLIN**

First Name **Sue**

ding Physician **Dr. Liberman**

Record Number **9527**

**ABERJONA NURSING CENTER**
**PHYSICAL THERAPY**
**WEEKLY PROGRESS NOTE**

Duration: From _12/31/02 to 1/7/03_

| | Ind | Sup | Ctg | MinA | Mod A | Max A | Dep | STGs |
|---|---|---|---|---|---|---|---|---|
| Roll -> R | | | | | | | | |
| Roll -> L | | | | | | | | |
| Sit -> Supine | | | ✓ | | | | | |
| Supine -> Sit | | | ✓ | ✓ | | | | |
| Sitting Balance | | ✓ | | | ✓ | | | |
| W/C Prop | | | | | ✓ | | | |
| W/C Man | | | | | | | | |
| Transfer Type: | | | Stand Step c RW | ✓ | | | | |
| Sit -> Stand | | | | | | | | |
| Stand -> Sit | | | | c RWO T VC P | ψ SAFETY | | | |
| W/C -> Bed | | | | ✓ | | | | |
| Bed -> W/C | | | | | | | | |
| Car | NT | | | | | | | |
| Low Seat | ↓ | | | | | | | |
| Ambulation | | | ✓ | | | | | |
| Device- WB | | | RW ↑ FWB | | | | | |
| Distance | | | ↑10 ft x 2 | | | | | |
| Func. Amb. | | | Fair/F | | | | | |
| Stand. balance | | | | | | | | |
| Stairs | NT | | | | | | | |
| Device / # Stairs | ↓ | | | | | | | |
| Rail | Right | Left | Both | None | | | | |

**Assessment**

Pt has not met STG's this
week, however ↑ his during
ambulation, ↑ attempts @ L/E.
c̄ therapy, ↓ Pt has weakness
① L/E exp. c̄ hand grip. c̄B
c̄ turning exp c̄ Ⓛ L/E
↓ majesty. Pt tends ↓
lean back c̄ static standing.
Pt will trans. stand c̄ percent ↑ RW to met
Ther ex: improved stability + active staw
① L/E cℓm exe tested c̄ d̄t
Stand × 10

Ed/ pt/family/other:
safety / pacing

Other:

**FAMILY/HOME:**

PLAN: Cont Skilled PTRx

_[signature]_ Michelle Herring PTA 1/7/03

**Therapist Signature/Date**
Loretta Byrne PT 1/9/03.

 name: _Bialla_    First Name: _Olive_    ding Physician: _Dr. Feldman_    Record Number: _2577_

## ABERJONA NURSING CENTER
## PHYSICAL THERAPY
## WEEKLY PROGRESS NOTE

Duration: From _11/4/03_ to _1/21/03_

| | Ind | Sup | Ctg | MinA | Mod A | Max A | Dep | STGs | Assessment |
|---|---|---|---|---|---|---|---|---|---|
| Roll -> R | ✓ | | | | | | | | Pt has made progress this |
| Roll -> L | ✓ | ✓ | | | | | | | week c acc func mob. |
| Sit -> Supine | | ✓ | ✓ | | | | | | Generally pt tol. 40 mins |
| Supine -> Sit | ✓ | | | | | | | | ↑ safely, max/mod assists, expanded |
| Sitting Balance | | | | | | | | | c education. Kitchen ae. |
| W/C Prop  | | | | | | | | | LOB c transfers. Ambulates |
| W/C Man | ✓ | | | | | | | | ae. difficulty ad -> stand if tired |
| Transfer Type: | Stand step c Rw | | | | | | | | Pt pushfull back into chair. Improved |
| Sit -> Stand | | | | | | | | ⑤ | ae standing then before |
| Stand -> Sit | | | ↓ | | | | | | Ther ex: |
| W/C -> Bed | | | | | | | | | @Lf act. leg. supin c 8# x 30 |
| Bed -> W/C | | ✓ | | | | | | ↓ | Stand. ↑ x 1C |
| Car | ✓ | | | | | | | | |
| Low Seat | ✓ | | | | | | | | |
| Ambulation | | RW/FWB | | | | | | continuance | |
| Device-WB | | ↑ 200' | | | | | | | |
| Distance | | ✓ | | | | | | | Ed/ pt/family/other: |
| Func. Amb. | | | | | | | | | Upstc c f[?] OT re. w/ pd/whelc + w/pg |
| Stand. balance | | F- -> F+ | very inconsistent | | | | | | |
| Stairs | | | | | | | | | Other: |
| Device / # Stairs | | | | | | | | | |
| Rail | Right | Left | Both | None | | | | | |

FAMILY/HOME:

PLAN: Cont. Skilled Pt Rx

Therapist Signature/Date: _____ OTR 1/21/03
_J. oita. B[?]pret PT._

| Family Name | First Name | Attending Physician | Record No. |
|---|---|---|---|
| Bohlu | Sue | Lieberman | 2527 |

# OCCUPATIONAL THERAPY
## PROGRESS NOTE

Duration: From 1/4/00 to 1/10/00

Weekly___  10 day___
14 day___  30 day___
D/C Summary ___

| | Cues | Ind | Stby | Min | Mod | Max | Total | New STG | Comments |
|---|---|---|---|---|---|---|---|---|---|
| **Self Care** | | | | | | | | | |
| Feeding | | ✓ | | | | | | Ⓣ | |
| Grooming | | ✓ | | | | | | ↓ | |
| U.E. Bath | | | | ✓ | | | | STby Ⓐ | |
| L.E. Bath | | | | | ✓ | | | mod | |
| U.E. Dress | | | | ✓ | | | | STby Ⓐ | |
| L.E. Dress | | | | | ✓ | | | mod | |
| Socks and Shoes | | | | | ✓ | | | ↓ | |
| Toilet hygiene | | | | ✓ | | | | STby Ⓐ | |
| Other | | | | | | | | | |
| **Fx'al Mobility** | | | | | | | | | |
| Bed Mobility | | | | ✓ | | | | STby Ⓐ | |
| Mobility | | | | | | | | N/A | |
| Transfer to bed | | | | ✓ | | | | STby Ⓐ | |
| Transfer to toilet/commode | | | | ✓ | | | | ↓ | |
| Transfer to chair | | | | ✓ | | | | ↓ | |
| Tub transfer | | | | | | | | TOL | |
| Fx'al Amb | ✓ | | | ✓ | | | | | |
| **Home Management** | | | | | | | | | |
| Simple meal prep | | | | | ✓ | | | mod Ⓐ | |
| Serving/clean-up | | | | | | | | ↓ | |
| Light cleaning | ✓ | | | | | | | | |

**Other:** (i.e. Safety, Cognition, Perception, ROM Strength, Mood/Behavior, etc.) ↓ safety, ↓ cog., ↓ perception, ↓ (L) UE strength.

**Patient/Family/Staff Teaching** ADL's, fx'al transfer + amb, safety, UE other Fx, HLO, bed mob. x'l

**Assessment:** pt has been making slow steady progress c̄ OT, but continues to demonstrate ↓ standing balance, ↓ safety. pt ↓ balance to ↓ fatigue, ↓ R sided UE. hemiparesis.

**Plan:** cont OT Tx c̄ orders as written on eval (L) sided

Therapist: Juli Sambach COTA/L    Date 1/10/00

Copy sent to M.D._____

**9**

| Family Name | First Name | Attending Physician | Record No. |
|---|---|---|---|
| Kuhlin | Sue | Lieberman | 2527 |

## OCCUPATIONAL THERAPY
### PROGRESS NOTE

Duration: From 1-10-03 to 1-17-03

Weekly ✓  10 day ___
14 day ___  30 day ___
D/C Summary ___

| | Cues | Ind | Stby (Sup) | Min | Mod | Max | Total | New STG | Comments |
|---|---|---|---|---|---|---|---|---|---|
| **Self Care** | | | | | | | | | |
| Feeding | | ✓ | | | | | | | |
| Grooming | | ✓ | | | | | | | |
| U.E. Bath | | | | ✓ | | | | | |
| L.E. Bath | | | | | | ✓ | | | |
| U.E. Dress | | | | ✓ | | | | | |
| L.E. Dress | | | | | | ✓ | | | |
| Socks and Shoes | | | | | | ✓ | | | |
| Toilet hygiene | | | ✓ SB(A) | | | | | Sup ↑ Ø cues | |
| Other Clothing Mgt | ✓ | | ✓ | | | | | | |
| **Fx'al Mobility** | | | | | | | | | |
| Bed Mobility | | | ✓ | | | | | | |
| W/C Mobility | | | | | | | | | |
| Transfer to bed | | | ✓ — ✓ | | | | | Consistent/extremely CTB | variable |
| Transfer to toilet/commode | | | ✓ — ✓ | | | | | knees buckle | |
| Transfer to chair | | | ✓ — ✓ | | | | | weakness | |
| Tub transfer | | | | | | | | ↓ | |
| Fx'al Amb | | | ✓ — ✓ | | | | | | |
| **Home Management** | | | | | | | | | |
| Simple meal prep | | | | | | | | | |
| Serving/clean-up | | | | | | | | | |
| Light cleaning | ✓ | | | | | | | | |

Other: (i.e. Safety, Cognition, Perception, ROM Strength, Mood/Behavior, etc.)
Safety - extremely inconsistent, cognition - poor
safety ↓ + SIM, extreme LE weakness - buckling

Patient/Family/Staff Teaching

Assessment: Balance and safety c̄ self-care + func mob

Plan: Pt making slow progress in all areas; pts limiting
Cont OT tx 6x/wk       factors are ↓ cognition
                        and weakness and
Tonya Landry COTA/L 1.17.03                LE's

Therapist          Date          Copy sent to M.D. _____

10

Plaintiff/patient was admitted to the Aberjona
nursing facility on Dec. 24, 2002.

Her age at the time was 85 years 3 months

NURSES NOTES FOR DECEMBER 2002

| DATE | SHIFT | NURSES NOTES / COMMENTS |
|------|-------|--------------------------|
| Dec 25 | 11pm - 7am | "SLEPT THROUGH THE NIGHT" |
| Dec 25 | 7pm - 3pm | "IN BED, REFUSES TO GET OUT OF BED" |
| Dec 25 | 3pm -11pm | "REMAINED IN BED SAYING SHE CAN'T GET UP" |
| Dec 26 | 7am - 3pm | "AMBULATING WITH WALKER" |
| Dec 26 | 3pm -11pm | "ALERT, ORIENTED AND COOPERATIVE, REMAINED IN BED ALL EVENING" |
| Dec 28 | 7am - 3pm | "RESIDENT ALERT, PLEASANT - AMBULATED" |
| Dec 28 | 3pm -11pm | "OFTEN NAPPING" |
| Dec 29 | 3pm -11pm | "ALERT...PLEASANT" |
| Dec 30 | 3pm -11pm | "REMAINED IN BED ALL SHIFT... APPETITE GOOD...ALERT" |

NURSES NOTES FOR JANUARY 1 through 22, 2003

| DATE | SHIFT | NURSES NOTES / COMMENTS |
|------|-------|------------------------|
| Jan 1 | | "PATIENT REMAINED IN BED FOR DINNER" SAYS "TOO TIRED TO GET UP" |
| Jan 2 | 3  11 | "PATIENT SLEPT MOST OF SHIFT" |
| Jan 3 | | "DID GET UP IN CHAIR FOR DINNER" |
| Jan 4 | | "PATIENT IN BED EARLY" "LOW MOTIVATION" "NAPS OFTEN" |
| Jan 5 | | "IN BED" "DOESN'T CONVERSE MUCH, APPEARS WEAK AND LETHARGIC" |
| Jan 6 | | "IN BED EARLY" |
| Jan 7 | | "PSYCH IN TO SEE RESIDENT" "IN BED MOST OF ___ SHIFT" |
| Jan 8 | | "EXTREMELY TIRED" "DOES NOT CONVERSE A GREAT DEAL" "POOR GAIT" |
| Jan 9 | | "UP IN CHAIR FOR DINNER BUT RETURNED TO BED SHORTLY... FATIGUE" |
| Jan 11 | | "LEGS ELEVATED" |
| Jan 12 | 3-11 | "IN BED MOST OF SHIFT" |
| Jan 13 | | "UP IN CHAIR FOR DINNER" |
| Jan 15 | | "DR LIBERMAN TO START ON ARICEPT AND WELLBUTRIN" "...SLEEP A LOT...FEELING TIRED" |
| Jan 16 | | "PATIENT ALERT" |
| Jan 17 | 3-11 | "EXTREMELY TIRED" |
| Jan 17 | 7-3 | "REMAINS LETHARGIC" |
| Jan 18 | | "WELLBUTRIN INCREASED... CONTINUES TO HAVE VERY LOW EFFECT" |
| Jan 19 | 3-11 | "PATIENT OUT OF BED TODAY" "FOUND ON FLOOR, FELL OUT OF BED" |
| Jan 20 | | "UP IN CHAIR FOR DINNER" |
| Jan 21 | | "RESIDENT ALERT" |
| Jan 22 | | "CASE MANAGER IN AM - DISCHARGE PLANNING IN PLACE FOR FRI. IF SON AGREES" |

NOTE: The word "IF" was used above; it does not say "SON AGREES"
as WAS FALSELY REPORTED in the GENERAL STATUS NOTES
In fact, SON DID NOT AGREE, however, that has no bearing on
HARVARD PILGRIM'S decision to terminate the Plaintiff's benefits.

12

NURSES NOTES FOR JANUARY 23 through 31, 2003

| reference: | DATE | SHIFT | NURSES NOTES / COMMENTS |
|---|---|---|---|
| | Jan 23 | | "UP IN CHAIR FOR DINNER; AMBULATED SHORT DISTANCE IN ROOM..." |
| | Jan 24 | | "RESIDENT ALERT, PLEASANT... RESTORATIVE THERAPY 5x/WEEK FOR TWO WEEKS" |
| | Jan 25 | | "FOUND AMBULATING IN ROOM [alone] - ALARMS IN PLACE AND WORKING, RESIDENT REMINDED TO CALL FOR ASSISTANCE" |
| | Jan 27 | | "UP IN CHAIR FOR DINNER" |
| | Jan 29 | | "UP IN CHAIR FOR SUPPER" |
| | Jan 30 | | "PATIENT ALERT" "PATIENT STATED 'I FEEL MUCH BETTER' " |

13

NURSES NOTES FOR FEBRUARY 1 through xx, 2003

| reference: | DATE | SHIFT | NURSES NOTES / COMMENTS |
|---|---|---|---|
| | Feb 1 | | "DINNER IN ROOM" |
| | Feb 2 | | "ALERT...OUT OF BED FOR SUPPER" |
| | Feb 3 | | "UP TO DINING ROOM FOR SUPPER" |
| | Feb 3 | | "APPOINTMENT WITH DR. APETAUEROVA (NEUROLOGIST) 10:30 AM FEB 28" |
| | | | "DR SKWERER [PSYCH] CALLED TO RE-EVAL PER DR LIBERMAN'S ORDERS" |
| | Feb 4 | | "WANTING TO GO TO BED EARLY" |
| | Feb 5 | | - - OK date not fully noted just 2/ /03 |
| | Feb 6 | | "MODERATELY LETHARGIC...APPETITE POOR" |
| | Feb 7 | | "PATIENT ALERT...APPETITE GOOD" |
| | Feb 8 | | -- OK |
| | Feb 13 | | "WEEPY, WANTS TO GO HOME" |
| | Feb 15 | | "UP IN CHAIR FOR SUPPER" |
| | Feb 16 | | "PATIENT ALERT...SOCIALIZING" |
| | Feb 17 | | "UP IN CHAIR FOR SUPPER" |
| | Feb 27 | | "AMBULATES WITH WALKER" |
| | Feb 28 | | "OUT TO SEE NEUROLOGIST IN AM" |
| | Feb 26 | | "VERY SAD...DEPRESSED" |

14

| Covered Services | What You Pay for Covered Services |
|---|---|
| **Skilled Nursing Facility Care**<br>For more information, please see *Section 7*.<br><br>    – Semi-private room (private if medically necessary);<br>    – Meals including special diets;<br>    – Regular nursing services;<br>    – Physical, occupational and speech therapy;<br>    – Drugs and biologicals;<br>    – Blood;<br>    – Medical and surgical supplies;<br>    – Laboratory test;<br>    – X-rays and other radiology services;<br>    – Use of appliances such as wheelchairs;<br>    – Physician Services | • You pay $0 for up to 100 days per Benefit Period.<br><br>• A 3-day prior hospital stay is not required. |
| **Home Health Care**<br>For more information, please see *Section 7*.<br><br><u>Home Health Agency Care*:</u><br>    – Part-time or intermittent skilled nursing and home health aide services;<br>    – Physical, occupational and speech therapy;<br>    – Medical social services;<br>    – Medical supplies<br><br><u>Also:</u><br>    – Physician Services;<br>    – Durable Medical Equipment – As covered by Medicare;<br>    – Portable X-rays and EKGs;<br>    – Laboratory Tests<br><br>* Your PCP must arrange all home health care and is responsible for getting Harvard Pilgrim approval for the referral. | • You pay $0 for all covered home health visits.<br><br><br>• You pay $0. |
| **Hospice Care**<br>For more information, please see *Section 7*.<br><br>Pain relief, symptom management, and support services for the terminally ill. Home care is provided. Also covers inpatient respite care and a variety of services usually not covered by Original Medicare. | Hospice services in a Medicare-certified Hospice are reimbursed directly by Medicare when you enroll in a Medicare-certified Hospice. |

- Section 5 – Your coverage - the medical benefits and services you get as a Member of First Seniority

# ✸ ValueOptions

## MENTAL HEALTH FACTS FOR OLDER ADULTS

### DEPRESSION IS A COMMON DISORDER

More than 2 million of the 34 million Americans age 65 and older suffer some form of depression. Unlike the temporary emotional experiences of sadness, grief and loss, depression is a serious disease.

Depression, however, can be effectively treated. More than 80 percent of people with depression improve when they receive appropriate treatment with medication, counseling, or both.

Depression can occur along with many physical disorders. For example, cancer patients, people with diabetes and persons who have had a recent heart attack or stroke have higher than average rates of depression.

Depression is not a normal part of aging. It is important to recognize depression and to get help, as depression can make recovery from physical problems more difficult.

Sometimes people do not get the help they need because of misunderstandings about the disease. Many people think their depression will go away by itself or that they're too old to get help. Others are ashamed to admit they are depressed. With treatment, even the most seriously depressed person can start to feel better, often in a matter of weeks.

### HOW TO GET HELP

- Speak with your doctor and/or care manager.

- See someone who specializes in the treatment of depression. If you need help finding a specialist feel free to call ValueOptions. We would be pleased to assist you.

## Call 1 888 777-4742

ValueOptions Inc., contracted by The Harvard Pilgrim Health Care, is a mental health and substance abuse services provider.

---

### Older Adults...

# Before you say, *"I'm fine"*...

### Ask yourself if you feel:

- ☐ nervous or "empty"
- ☐ guilty or worthless
- ☐ very tired and slowed down
- ☐ you don't enjoy things the way you used to
- ☐ restless or irritable
- ☐ like no one loves you
- ☐ like life is not worth living

### Or if you are:

- ☐ sleeping more or less than usual
- ☐ eating more or less than usual
- ☐ having persistent headaches, stomach aches or chronic pain

These may be symptoms of Depression, a treatable medical illness.

But your doctor can only treat you if you say how you are really feeling.

*Depression is not a normal part of aging.*

## *Talk to your doctor.*



AoA
Administration on Aging

16

# ABERJONA NURSING CENTER

## PHYSICIAN'S PROGRESS NOTES

Name of Patient _Sue Boshen_

| DATE | |
|------|--|
| 1/23/03 | NP Progress Note: |

NP Progress Note:

1/23/03 Sue is discouraged she is not getting any stronger. She does not know if she will ever be able to return home. She is not able to even get out of bed by herself & she understands that this is a safety issue. Today is her last day as skilled. Family meeting c son. — he was advised to fill out medicaid paperwork.

O- A&O x 2

RRR

CTA B

Abd SNT/ND

Ext - B⁺ edema

A/P:

① Skilled rehab complete. Pt's rehab has maxed out. She did not make any gains. Awaiting for son to fill out medicaid forms.

② Restorative PT/OT.

Maureen Cleveland, NP

17

(OVER)

# FIRST SENIORITY®



Harvard Pilgrim
Health Care

January 21, 2003

Sue Bohlin
HPF218804-00
c / o Aberjona Nursing Center
184 Swanton Street
Winchester    MA   01890

Skilled Nursing Facility

**Regarding:  Continued Stay Coverage for Skilled Nursing Facility Care.**

This letter is to notify you that HPHC has determined that you are no longer eligible for continued care in a skilled nursing facility.  This decision is based on an assessment of your medical condition and our finding that the health care services you currently need do not meet Medicare guidelines for continued skilled nursing care. Skilled care must be furnished by or under the supervision of skilled nursing or rehabilitation personnel to assure the safety of the patient and to achieve the medically appropriate result.  However, when a patient does not require skilled services on a daily basis, the services they do receive while in skilled nursing facility are not covered.

Thus your continued stay at Aberjona Nursing Center will not be covered as of  January 24, 2003 because you are receiving custodial level of care services such as assistance with bathing, dressing, meal preparation and ambulating. As per the discussion between Harold Forbes, MD, HPHC Associate Medical Director and Robert Liberman, MD, your care was determined to be custodial and therefore not a covered benefit. On December 22, 2002 you were seen at Lahey Clinic Hospital after a fall at home. On December 24, 2002 you were admitted to Aberjona Nursing Center. At this time you have reached a state of stability. You require a contact guard for transfers and ambulating. You require maximum assistance for all activities of daily living. It is our understanding that you have elected to remain at this facility for long term custodial care.  You will not need skilled nursing care or skilled rehabilitation services on a daily basis. Questions about clinical criteria used to make this determination can be discussed by contacting the Clinical Concerns Department at 1-888-888-4742 extension 38723 between the hours of 8:00 am to 5:00 pm.  If the treating physician would like to discuss this case with a physician reviewer, please call the UM Department at 1-888-888-4742, between the hours of 8:30 am to 5:00 pm.

If you choose to continue your stay at Aberjona Nursing Center  you will be financially responsible for the cost of all services except those services covered under Part B of Medicare beginning on January 24, 2003.

Instead of care in a Skilled Nursing Facility, we can provide the following alternative covered services for you: N/A

If you have any questions about any of the information in this letter, please call Peg Bleier, RN, at 781-553-0483.

18

## Harvard Pilgrim publicly say:

> Harvard Pilgrim does not offer or provide its utilization/ care management clinicians and staff, or affiliated providers, any incentives or compensation designed to restrict appropriate care or services in any way. In fact, we work closely with clinicians, staff and your providers to ensure that everyone is aware of the potential for harm if medically necessary services are not provided. We believe that preventive care and the early treatment or active management of an illness benefits everyone.

ref. Harvard Pilgrim publication **"Your Health"**  FALL 2005
pertinent part photocopied here

## However:

From the Harvard Pilgrim Document
**"Physician Reimbursement - Medicare  (9/12/03)"**
stamped as "confidential"
pertinent part photocopied here

## Harvard Pilgrim confidentially say:



 

CONFIDENTIAL

### Physician Reimbursement - Medicare (9/12/03)

### Payment Methods

Group Payment

In most cases, Harvard Pilgrim makes payments to groups of doctors for taking care of their Harvard Pilgrim patients, and the group decides how to compensate the physicians employed by the group. Group payment can be made in several ways. In one, Harvard Pilgrim pays the group a fixed amount for each of its Harvard Pilgrim patients and the group uses the total payment to cover the cost of certain services for those patients. In another, the groups are paid a fee for each of the services their doctors provide to Harvard Pilgrim members. At the end of the year, the groups have an opportunity to gain additional compensation if certain financial goals are achieved, based on surplus over budgeted per member per month ratios.

Groups of doctors that participate in such arrangements have protections in their contracts with Harvard Pilgrim that limit their financial risk. This means that unusually high medical expenses

**Harvard Pilgrim Health Care, Inc.**
1600 Crown Colony Drive
Quincy Massachusetts 02169

**19**

Case 1:05-cv-11523-RWZ    Document 104    Filed 11/22/2005    Page 1 of 1

ATTACH ORIGINAL SIGNED COPY    COPY    DISTRIBUTED BY:

## PHYSICIAN'S INTERIM / TELEPHONE ORDERS

*"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.*

| FACILITY NAME Abejona | FACILITY NO. | FLOOR 1 | ROOM & BED 117B |
|---|---|---|---|

| PATIENT Sue Bohlin | PT. NO. 1 | PHYSICIAN Lieberman |
|---|---|---|

| ORDER REC'D | DATE 1-24-03 | TIME 4P | BY | SIGNATURE OF RECEIVING NURSE Nancy Chamberlin RN |
|---|---|---|---|---|

**ALLERGIES:** PCN

- Cont OT & PT until 1/24/03. At end of visit and level of care, then d/c OT & PT

PHYSICIAN SIGNATURE: M Cleveland, M.D.    DATE: 1/24/03

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS*

**1**

PLEASE INDICATE HOURS OF ADMINISTRATION OF EACH MEDICATION

---

## PHYSICIAN'S INTERIM / TELEPHONE ORDERS

*"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.*

| FACILITY NAME Abejona | FACILITY NO. | FLOOR 1 | ROOM & BED 117B |
|---|---|---|---|

| PATIENT Sue Bohlin | PT. NO. 1 | PHYSICIAN Lieberman |
|---|---|---|

| ORDER REC'D | DATE 1-24-03 | TIME 4P | BY | SIGNATURE OF RECEIVING NURSE Nancy Chamberlin |
|---|---|---|---|---|

**ALLERGIES:** PCN

Restorative Nsg 5x/wk x 2 wks:
1/27/03 - 2/7/03 for: BUE + BLE
ther ex Ambulation, standing balance,
transfer, sit to stand leg, D/C.

PHYSICIAN SIGNATURE: Maureen Cleveland, M.D.    DATE: 1/24/03

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS*

**2**

PLEASE INDICATE HOURS OF ADMINISTRATION OF EACH MEDICATION

---

## PHYSICIAN'S INTERIM / TELEPHONE ORDERS

*"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.*

| FACILITY NAME Abejona | FACILITY NO. | FLOOR 1 | ROOM & BED 117B |
|---|---|---|---|

| PATIENT SUE BOHLIN | PT. NO. | PHYSICIAN Lieberman |
|---|---|---|

| ORDER REC'D | DATE 1/30/03 | TIME 3:40 | BY | SIGNATURE OF RECEIVING NURSE Gerladine Browne RN |
|---|---|---|---|---|

**ALLERGIES:** PCN

(1) √ Comprehensive Metabolic Profile.

noted 1/30/03

PHYSICIAN SIGNATURE: Maureen Cleveland    M.D.    DATE: 1/30/03

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED

PLEASE INDICATE HOURS OF ADMINISTRATION OF EACH MEDICATION

**20**

ATTACH ORIGINAL SIGNED COPY

## PHYSICIAN'S INTERIM / TELEPHONE ORDERS

"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.

| FACILITY NAME | FACILITY NO. | FLOOR | ROOM & BED |
|---|---|---|---|
| Aburjona | | 1st | 1B |

| PATIENT | PT. NO. | PHYSICIAN |
|---|---|---|
| Sue Bohlen | | Wiezman |

| ORDER REC'D | DATE 1/31/03 | TIME 430 P | BY | SIGNATURE OF RECEIVING NURSE Brenda Smedley RN |

ALLERGIES: PCN

① House supplements c̄ meals

noted Brenda Smedley RN 1-31-03

PHYSICIAN SIGNATURE: Maureen Aberman M.D.   DATE: 1/31/03

PLEASE INDICATE HOURS OF ADMINISTRATION OF EACH MEDICATION

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
**ORIGINAL** - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS

1

---

COPY

## PHYSICIAN'S INTERIM / TELEPHONE ORDERS

"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.

| FACILITY NAME | FACILITY NO. | FLOOR | ROOM & BED |
|---|---|---|---|
| Aburjona | | 1st | 117-1 |

| PATIENT | PT. NO. | PHYSICIAN |
|---|---|---|
| Bohlen, Sue | | Dr. Lieberman |

| ORDER REC'D | DATE 1-31-03 | TIME | BY | SIGNATURE OF RECEIVING NURSE Mary ___ RN |

ALLERGIES: PCN

Imodium ī po q 4° prn for loose stools
to Dr. M. Sullivan for Dr. Lieberman

PLEASE INDICATE HOURS OF ADMINISTRATION OF EACH MEDICATION
1/31/03

PHYSICIAN SIGNATURE: M Curran, MD   M.D.   DATE: 2/6/03

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
**ORIGINAL** - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS

2

---

## PHYSICIAN'S INTERIM / TELEPHONE ORDERS

"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.

| FACILITY NAME | FACILITY NO. | FLOOR | ROOM & BED |
|---|---|---|---|
| | | 1 | 117-1 |

| PATIENT | PT. NO. | PHYSICIAN |
|---|---|---|
| | | |

| ORDER REC'D | DATE | TIME | BY | SIGNATURE OF RECEIVING NURSE |

ALLERGIES:

21

PHYSICIAN SIGNATURE:   M.D.   DATE:

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED

DISTRIBUTED BY: ... TO EXPOSE ADHESIVE, REMOVE LINER ... EACH MEDICATION

FAXED

**PHYSICIAN'S INTERIM / TELEPHONE ORDERS**

"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.

| FACILITY NAME Aberjona | FACILITY NO. | FLOOR | ROOM & BED |
|---|---|---|---|

PATIENT Bohlin Sue                    PT. NO.          PHYSICIAN LIBERMAN

ORDER REC'D   DATE 2-1-03   TIME 2p   BY   SIGNATURE OF RECEIVING NURSE Maureen ___

ALLERGIES: Penicill

(1) Risperd to 5 mg po qPM
(2) Wellbutrin 0.75 g ½ po qAM & 37.5 mg po qPM
(3) Consult vary Neurology "Unable to walk" (no Nus)
(4) re asses pt to re asses __ ___

PHYSICIAN SIGNATURE: ___    M.D.   DATE: 2/1/03

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL* - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS

**1**

---

**PHYSICIAN'S INTERIM / TELEPHONE ORDERS**

"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.

| FACILITY NAME Aberjona | FACILITY NO. NC | FLOOR 1 | ROOM & BED 117B |
|---|---|---|---|

PATIENT SUE  BOHLIN                    PT. NO.          PHYSICIAN Liberman

ORDER REC'D   DATE 2-4-03   TIME 4pm   BY   SIGNATURE OF RECEIVING NURSE Geddue Carunch RN

ALLERGIES:  — PCN —

Two-step Mantoux

TO M Cleveland / Liberman / Geraldine Carunch RN

PHYSICIAN SIGNATURE: ___    M.D.   DATE: 2/8/03

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL* - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS

**2**

---

**PHYSICIAN'S INTERIM / TELEPHONE ORDERS**

"UNLESS CERTIFIED" INTERCHANGEABLE DRUG PRODUCT(S) WILL BE DISPENSED.

| FACILITY NAME Aberjona | FACILITY NO. | FLOOR 1 | ROOM & BED 117B |
|---|---|---|---|

PATIENT Sue Bohlin                    PT. NO. 2527          PHYSICIAN Liberman

ORDER REC'D   DATE 2-5-03   TIME 355p   BY   SIGNATURE OF RECEIVING NURSE Nancy Chitmon

ALLERGIES: PCN

(1) Remeron 7.5 mg PO hs x 1 wk (2.5 to 2-11)
(2) Remeron 15 mg PO hs start 2-12

TO Maureen Cleveland NP / Nancy Chitmon

PHYSICIAN SIGNATURE: ___    M.D.   DATE: ___

**22**

---

ATTACH ORIGINAL SIGNED COPY

PLEASE INDICATE HOURS OF ADMINISTRATION OF EACH MEDICATION

**PHYSICIAN'S INTERIM / TELEPHONE ORDERS**

*"UNLESS CERTIFIED" INTERCHANGEA(?) DRUG PRODUCT(S) WILL BE DISPENS*

| FACILITY NAME | Sue Bohlin | FACILITY NO. | FLOOR (1) | ROOM & BED 117B |

| PATIENT | Abizona | | PT. NO. 2527 | PHYSICIAN Liberman |

| ORDER REC'D | DATE 2/10/03 | TIME 3¹⁰ | BY | SIGNATURE OF RECEIVING NURSE Nancy Cutoma RN |

ALLERGIES: PCN

① Diet to grounds. Can advance as tolerated.

N. Cutoma
2-6-03

| PHYSICIAN SIGNATURE: | Maureen Cleveland NP | M.D. | DATE: 2/6/03 |

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS*

**1**

---

**PHYSICIAN'S INTERIM / TELEPHONE ORDERS**

*"UNLESS CERTIFIED" INTERCHANGEA(?) DRUG PRODUCT(S) WILL BE DISPENS*

| FACILITY NAME | Abezona NC | FACILITY NO. | FLOOR 1 | ROOM & BED 117B |

| PATIENT | SUE BOHLIN | | PT. NO. | PHYSICIAN Liberman |

| ORDER REC'D | DATE 2-13-03 | TIME 240 | BY | SIGNATURE OF RECEIVING NURSE Geraldine Caruncho RN |

ALLERGIES: — PCN —

△ BP Vs to bi-weekly

| PHYSICIAN SIGNATURE: | To Maureen Cleveland Dr. Liberman / G Caruncho RN | M.D. | DATE: 8/4/03 |

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS*

**2**

---

**PHYSICIAN'S INTERIM / TELEPHONE ORDERS**

*"UNLESS CERTIFIED" INTERCHANGEA(?) DRUG PRODUCT(S) WILL BE DISPENS*

| FACILITY NAME | Abezona NC | FACILITY NO. | FLOOR 1 | ROOM & BED 117B |

| PATIENT | SUE BOHLIN | | PT. NO. | PHYSICIAN Liberman |

| ORDER REC'D | DATE 2-26-03 | TIME 215 | BY | SIGNATURE OF RECEIVING NURSE Geraldine Caruncho RN |

ALLERGIES: PCN

TSH 4.600

Levoxyl 50 mcg PO QD

√ TSH - 2 mo

TO Dr Liberman / G Caruncho RN

| PHYSICIAN SIGNATURE: | M Cleveland, NP 3/10/03 | | DATE: |

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS*

**23**

ATTACH ORIGINAL SIGNED COPY

CHART CONTROL COPY

An Omnicare Company

DISTRIBUTED BY:

ATTACH ORIGINAL SIGNED COPY

CHART CONTROL COPY

An Omnicare Company

DISTRIBUTED BY:

**PLEASE INDICATE HOURS OF ADMINISTRATION OF EACH MEDICATION**

"UNLESS CERTIFIED" INTERCHANGEA DRUG PRODUCT(S) WILL BE DISPEN

| FACILITY NAME | | FACILITY NO. | FLOOR | ROOM & BED |
|---|---|---|---|---|
| Aberjona | | NC | | 117B |

| PATIENT | PT. NO. | PHYSICIAN |
|---|---|---|
| Sue Bohlin | | Liberman |

ORDER REC'D — DATE 2-28-03 — TIME 300 — BY — SIGNATURE OF RECEIVING NURSE Geraldine Carunchio

ALLERGIES: PCN —

BUN, creat before head CT. Schedule head CT
$\bar{c} + \bar{s}$ contrast r/o brain mets, NPH, subdural. NPO
4° before scan. PT screen/eval + tx - 5d/wk
FU 2mo $\bar{c}$ Dr. Apetauerova TO M Cleveland of Liberm TO Carr.

PHYSICIAN SIGNATURE: M Cleveland NP 3/1/06/03

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL* - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS

**1**

---

## PHYSICIAN'S INTERIM / TELEPHONE ORDERS

"UNLESS CERTIFIED" INTERCHANGEA DRUG PRODUCT(S) WILL BE DISPENS

| FACILITY NAME | FACILITY NO. | FLOOR | ROOM & BED |
|---|---|---|---|
| aberjona | | 1 | 117B |

| PATIENT | PT. NO. | PHYSICIAN |
|---|---|---|
| Sue Bohlin | 2527 | Liberman |

ORDER REC'D — DATE 2 28 03 — TIME 415p — BY — SIGNATURE OF RECEIVING NURSE Nancy Automsn SN

ALLERGIES: PCN — N Automan 2sn

① PT Eval $\bar{c}$ TX

PHYSICIAN SIGNATURE: TO ala Liberman (N may Automen SN) M Cleveland NP 3/1/06/03 DATE:

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL* - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS

**2**

---

## PHYSICIAN'S INTERIM / TELEPHONE ORDERS

"UNLESS CERTIFIED" INTERCHANGEA DRUG PRODUCT(S) WILL BE DISPENS

| FACILITY NAME | FACILITY NO. | FLOOR | ROOM & BED |
|---|---|---|---|
| Aberjona | | 1 | 117B |

| PATIENT | PT. NO. | PHYSICIAN |
|---|---|---|
| Sue Bohlin | 2527 | Liberman |

ORDER REC'D — DATE 3-1-03 — TIME — BY — SIGNATURE OF RECEIVING NURSE

ALLERGIES:

Skilled PT 5x wk x 2 wks for therapeutic ex,
functional training / bed mob + transfer training, gait
training, pt / caregiver education, D/C planning.

PHYSICIAN SIGNATURE: M Cleveland NP 3/6/03

THE ABOVE ORDERS VALID UNTIL DATE OF NEXT REVIEW, UNLESS OTHERWISE INDICATED
*ORIGINAL* - PHYSICIAN PLEASE SIGN AND RETURN WITHIN 48 HOURS

**24**

## PHYSICIAN'S PROGRESS NOTES (cont'd)

| DATE | NP Progress Note. |
|------|-------------------|
| 27/03 | Ms. Bohler is now under restorative care no longer skilled. Mrs Bohler feels well. No complaints. Denies H/A, CP/SOB/Abdo pain/N/V/D/C. |
| | VS: 96, 22, 72, 110/80, 97% RA |
| | Gen: A&O, CUB in chair |
| | Resp: CTA (B) |
| | Cor: RRR |
| | Abd: SNT/ND ⊕ BS |
| | TP |
| | ① Inability to ambulate → stable cont Restorative care. |
| | ② Depression → stable. |
| | ③ Await podiatry |
| | —— Maureen Cleveland, NP |
| 1/30/03 | NP Progress Note. Pt has lost 11 lbs since admission. ↑ Pt @ activity. Will examine tomorrow. Vitals. —— Maureen Cleveland, NP |

25

Date:_____

**Report from Hospital:** Clinic_____ _Lahey Clinic , Neurology Department_____
(name)

**1. PATIENT'S RETURN APPOINTMENTS**

| Clinic or Procedure | Date | Time |
|---|---|---|
| Gait disorder | 2/28/03 | |
| | | |
| | | |

**2. DIAGNOSIS** (Include any change in diagnosis, or operation or procedure performed.)
_Multifactoral gait disorder ;_
_Dementia_

**3. NO CHANGE IN ORDERS**  ⑤ a.pp̄ 3-5  ↓BUN, creat. — BA

**4. CHANGES OR NEW ORDERS** — Needs (PT eval) + head CT (to r/o brain mets,
c+s contrast NPH, subdural)

**a. Medications:** (Please enclose prescriptions)

| Drug | Strength and Frequency | New | Chg. | Disc. |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**b. Treatments:** (PT)_____

_____

**c. Diet:**_____

**d. Activity:** (PT.)_____

**5. OTHER INSTRUCTIONS OR SUGGESTIONS FOR PATIENT CARE:** (PT)
Plse c̄ me in 2 month
NPO
Pt OK

**6. HEAD NURSE TO CONTACT:**_____R.N._____EXT._____

**7.** _____R.N.____ _Anthony_____M.D.
(Signature of Nurse)            (Signature of Physician)

APETAVENTO VA
→  781-744-8631

**26**

```
-===============================  CHART NOTE  =====================================
        LC# :    000000834358                    PRINTED ON :   03/09/04   1519
                                                         BY :   MR017MNW   SK8B
```

IMPRESSION:

1) Gait disorder, most likely due to frontal lobe dysfunction. There are no features suggesting Parkinsonism. She needs head CT to make sure she doesn't have NPH.
2) Dementia. Given the history of urinary incontinence, gait disorder and falls, again, NPH has to be ruled out. Also, given history of breast CA, we have to look for any metastasis.

I am ordering head CT and (strongly suggesting physical therapy) for her gait disorder. I would like to see her back after head CT is done within one to two months.

Diana Apetauerova,M.D.
N#
D: 02/28/03, R: , T: 03/01/03
DA:nsmt:dmg
@03/03/03:drc

cc:
Dr. Nava Dana, General Internal Medicine

Dr. Robert Liberman
267 Boston Post Road
Billerica, MA 01862 Dr. Robert Liberman
267 Boston Post Road
Billerica, MA 01862

```
============================= END OF DOCUMENT ================================
```

**17**

03/06/2003 12:49 FAX 781 744 5392    LAHEY RAD TRANs TRNSCRPT    ⓐ002

RADIOGRAPHIC FINDING AND SUMMARY-LAHEY CLINIC BURLINGTON
**FINAL REPORT**

============================================================

Name: BOHLIN, SUE M, MRS          MRN: 0834358 Accession#:1577354
SEX: F  DOB: 09/27/1917 ---- Age: 85 Years          Order#:194404
Perform Date/Time: 03/05/2003 18:49    Exam Code:(BU)CBRAI3
Exam:CT BRAIN W+WO CONT
Ordering MD:LIBERMAN, ROBERT B.          Patient Loc: OP
History: ?BRAIN METS ?SUBDURMAL ?NPH  CHANGE MENTAL STATUS
        - REPORT TO ABERJONA NURSING FAX 781-729-3271

============================================================

    CT SCAN OF THE HEAD:

    CLINICAL HISTORY:  85 YEAR OLD WITH MENTAL STATUS CHANGE

    TECHNIQUE:  2.5 MM. SLICE THICKNESS WAS PERFORMED THROUGH THE
    POSTERIOR FOSSA FOLLOWED BY 7.5 MM. SLICE THICKNESS THROUGH THE
    REMAINDER OF THE HEAD.  BOTH SOFT TISSUE AND BONE ALGORITHMS
    WERE OBTAINED.

    FINDINGS:  NO HEMORRHAGE OR MASS EFFECT WAS SEEN.  THE CSF
    SPACES WERE COMMENSURATE WITH PATIENT'S AGE.  THERE IS MILD TO
    MODERATE WHITE MATTER CHANGE SEEN IN THE CORONA RADIATA AND
    CENTRUM SEMIOVALE.  A REMOTE LACUNAR STROKE WAS SEEN IN THE
    REGION OF GLOBUS PALLIDUS ON THE LEFT AS WELL AS THE HEAD OF
    THE CAUDATE ON THE RIGHT.  THE BRAIN STEM AND POSTERIOR FOSSA
    WERE OTHERWISE UNREMARKABLE AS WELL.  VASCULAR CALCIFICATIONS
    WERE SEEN IN THE VERTEBROBASILAR AND LEFT INTERNAL CAROTID.
    FOLLOWING CONTRAST ADMINISTRATION, THE VASCULAR STRUCTURES
    ENHANCE IN A NORMAL FASHION.  NO EXTRA-AXIAL FLUID COLLECTION
    WAS SEEN.  THE BONY ARCHITECTURE WAS OTHERWISE NORMAL.  THE
    SKULL BASE SHOWS MILD MUCOSAL THICKENING OF THE ETHMOID SINUSES
    BILATERALLY.

    IMPRESSION:
    NORMAL EXAMINATION FOR PATIENT'S AGE.  IT HAS NOT CHANGED
    TERRIBLY SINCE 10/22/02.

Interpreted by:
Carl A. Geyer  /signed by/ CARL A. GEYER
Transcribed on: 03/06/200312:30    by Fran C. Dorsey
                Finalized on: 03/06/2003  12:31
Copy to: REFERRING, MD

28

psychiatry consultation. It was determined she had probable Alzheimer's disease. Her therapy was discontinued on 01-24-03. She met her established goals. She was at her prior level of mobility. Based on her performance, past medical history and functional status significant improvement in her condition in a reasonable period of time would not be anticipated. There is no note in the file that she was in need of or received skilled nursing assessment or intervention on a daily basis. Care needs appear to have been custodial in nature as of 01-25-03.

## Our decision

Our decision is that Harvard Pilgrim Health Plan does not have to pay for or provide more daily skilled services for Ms. SMB as of 01-25-03.

**29**

## FINDINGS

After careful consideration of the entire record of the evidence, the Administrative Law Judge makes the following specific findings:

1. The appellant is a member of Harvard Pilgrim Health Plan's Medicare+Choice Plan.

2. Following a qualifying hospital stay, the appellant was a patient at Aberjona Nursing Center from December 24, 2002 - April 8, 2003.

3. During the period January 24 - April 8, 2003, the appellant did not require treatment of a skilled nature which, as a practical matter, could only be provided in a skilled nursing facility on an inpatient basis.

4. The appellant knew that the services she was to receive on and after January 24, 2003 would not be covered by Medicare.

## DECISION

It is the decision of the Administrative Law Judge that payment shall not be made for services furnished to the appellant by the provider during the period January 24 – April 8, 2003, and that the appellant is liable for the cost of the non covered services.

CAROL A. SAX
U. S. Administrative Law Judge

AUG 2 3 2004
Date

**30**

## THERAPY PROGRESS NOTE

**PTS NAME** _____  **MR#** _____

**PHYSICIAN NAME** _____

| DATE | PROGRESS NOTE |
|------|---------------|
| 3/1/03 | PT orders received. Chart reviewed and evaluation completed. Please see PT eval for status & goals.    _Marc Keudricion PT_ |
| 3/1/03 | Rx begun today which consisted of bed mobility, transfer training, sit/stand → RW, BLE active ex. Pt had difficulty sit → stand, needed cues for technique + stepping → mobility activities. Will benefit from skilled PT to continue to maximize mobility & safety.    _Marc Keudricion PT_ |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**31**

**SALTER HEALTH CARE SERVICES**
**PHYSICAL THERAPY EVALUATION**
**Aberjona Nursing Center**

Client Name: _Sue Bohlin_  Age: _85_  Case #: _2527_  Room #: _117 B_

Admission Date: _12/24/02_ Admitted From: _LCMC_ Onset Date: _2/24/03_ Physician: _Dr. Seamen_

Medicare #: _____ Medicaid #: _____ Other Ins: _1st Seniority_ _recurrent_

Diagnosis/Present Medical History: _↓ functional activity, gait disturbance, ↑↑ falls,_
_s/p atrial flutter_

Pertinent Medical History: _(R) breast CA, TAH BSO, hypothyroidism_

Medications on Admission: _mom_

Previous Mobility Level: _Previously lived alone in 2nd Fl apt - son lives on 3rd Floor_
Physical Layout: _amb @ 5 device, was @ stairs, & driving_
Equipment: _RW_
_wearing TED stockings_

Medical/Ortho:
A. Precautions: _fall risk_
B. Weight Bearing Status: _FWB_
C. CPM/Ortho Surgeon: _N/A_

| INITIAL STATUS | | | DISCHARGE STATUS (Date: 4/1/03) | | |
|---|---|---|---|---|---|
| **Strength/Coordination** | | | **Strength/Coordination** | | |
| Left Lower Extremity | WFL | (Impaired) | Left Lower Extremity | (WFL) | Impaired |
| Right Lower Extremity | WFL | (Impaired) | Right Lower Extremity | (WFL) | Impaired |
| Comments: | | | Comments: | | |
| Hip: 3+/5 @ hip muscles | | | Hip: | | |
| Knee: 4-/5 knee flex + ext | | | Knee: | | |
| Ankle: 4/5 DF, PF | | | Ankle: | | |
| **ROM** | | | **ROM** | | |
| Left Lower Extremity | (WFL) | Impaired | Left Lower Extremity | (WFL) | Impaired |
| Right Lower Extremity | (WFL) | Impaired | Right Lower Extremity | (WFL) | Impaired |
| Comments: | | | Comments: | | |
| Hip: | | | Hip: | | |
| Knee: | | | Knee: | | |
| Ankle: neutral DF (L) | | | Ankle: | | |
| **Balance** Sitting Static: (WFL) Impaired | | | **Balance** Sitting Static: (WFL) Impaired | | |
| Dynamic: WFL (Impaired) F+ | | | Dynamic: (WFL) Impaired | | |
| Standing Static: WFL (Impaired) F- | | | Standing Static: WFL (Impaired) | | |
| Dynamic: WFL (Impaired) F-/F | | | Dynamic: WFL (Impaired) | | |
| Safety/Knowledge of Precautions: | | | Safety/Knowledge of Precautions: | | |
| Fair - | | | Fair | | |

| Cardiopulmonary: | | | | | Cardiopulmonary: | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | HR | BP | RR | O2Sat on: RA | | HR | BP | RR | O2Sat on: RA |
| Resting: | 96 | | | 96% | Resting: | 78 | 120/78 | 18 | 96% |
| Activity: | 112 | | | 96% | Activity: | | | | |

Therapist Signature: _Marc Heudison PT_    Therapist Signature: _Linda Byrne PT_

**32**

| INITIAL STATUS | DISCHARGE STATUS (Date: 4/1/03) |
|---|---|
| Mental Status: ↓ memory, alert | Bed Mob: Rolling I Ξ rail |
| vision: reading glass Hearing: HoH | Supine ⇔ sit c/Ⓢ → min A |
| Sensation: gross & intact Coordination: | Txs: sit ⇔ stand c/Ⓢ/min A |
| Bed Mob: rolling: Sup. (rail assist) | bed ⇔ chair c/Ⓢ/LG |
| Supine>sit: min Ⓛ (needs cue for | Amb: up to 150' Ξ RW Ξ C/Ⓢ/LG |
| Sit>supine: min Ⓛ J technique | abilities vary daily, pt |
| Transfers: sit⇔stand min Ⓛ bed⇔chair: min Ⓛ/cguard | has ↓ insight to status, ↓ |
| Ambulation: cguard min Ⓛ device: RW distance: 75' | safety. |
| Posture/gait deviations: ___ | Coordination: impaired Ⓑ LEs |
| Stairs: NT     1 rail     2 rails | |
| W/c Mob: NT | |
| Other: | |

| Pain: Description/Location: | Pain: Description/Location: |
|---|---|
| At Rest  1 2 3 4 5 6 7 8 9 10 (None) | At Rest  1 2 3 4 5 6 7 8 9 10 (None) |
| Activity 1 2 3 4 5 6 7 8 9 10 (None) | Activity 1 2 3 4 5 6 7 8 9 10 (None) |

| Problem List: ↓ balance     ↓ safety | EDUCATION/TEACHING |
|---|---|
| ↓ LE strength | Patient Teaching Completed: |
| ↓ activity tolerance | Type: D/c planning |
| Ⓑ ↓ bed mob, transfers, dependent prt | CARRYOVER: Good (Fair) Poor |

| Assessment: pt presents c ↓ functional | Family Teaching Completed: |
| mobility, recurrent falls, ↓ safety, LE | To: DTR + Son |
| weakness & endurance. Would benefit | Type: D/c planning, safety, current status |
| from skilled PT to maximize functional | |
| mobility & supervised level for | CARRYOVER: (Good) Fair Poor |
| transfers + ambulation. | |

| Short Term Goals: | Plan: | Recommendations: |
|---|---|---|
| Bed Mobility: sup | ☑ Therapeutic Activities | D/c skilled PT pt it base line |
| Transfers: c/ sup. | ☑ Gait Training | requires c/Ⓢ at best for mobility, |
| Ambulation: c/ sup | ☑ Ther Exercise | Spoke at length Ξ pt + family |
| With: RW | ☐ ROM/Stretching | re d/c planning. D/c plan indetermined |
| Distance: 100' | ☑ Pt/Fam/Staff Education | at this time. Pt informed 24° |
| Fnxl Amb: | ☑ D/C Planning | care recommended at this time. |
| Other: stairs min A | ☐ Other: | |

| Long Term Goals: | |
|---|---|
| Bed Mobility: Ⓘ    Transfers: Ⓢ Ξ RW | |
| Ambulation: Ⓢ Ξ RW 150' Fnxl Amb: Ⓘ Ξ RW | |
| Stairs: 28 ↑ + 8 ↓ 4 pt | |

| Patient Goals: to walk better, to go home | Signature: Linda Byrne PT |
|---|---|
| Goals Discussed with Pt/Family (YES) NO | Date: 4/1/03 |

Frequency: 5 x/week for 2 weeks

Signature: Marc Keudran Date: 3/11/03

**I certify the need for these services under the plan of treatment.

Physician's Signature: McClucla MD Date: 3/27/03

33

**Harvard Pilgrim**
**Health Care**

## HPHC AUTHORIZATION REQUEST
### Commercial FAX # 1-(617)-509-1628
### First Seniority only- FAX (617)-509-8982

ATTENTION: _Functional Therapies_

PATIENT NAME: _Sue Bohlin_

PATIENT'S MEMBER ID#: _HPF 2180 400_

REFERRING PHYSICIAN'S FULL NAME: _Dr. Robert Liberman_

PROVIDER NAME AND ID#: _Aberjona Nursing Center_

TELEPHONE: (781) _729-9370_ FAX: (781) _729-7923_

FIRST TREATMENT DATE: _March 1, 2003_

SPECIFIC DIAGNOSIS (Indicate right or left): _decrease functional activity_

SERVICES REQUESTED (Please check):

| | | | |
|---|---|---|---|
| Physical Therapy | ✓ | Single Visit (Include eval & treatment plan) | |
| Occupational Therapy | | Initial Auth | ✓ |
| Speech Therapy (Must include evaluation) | | FOCUSED REVIEW (Extension) | |
| | | Benefit Exception (Extension) (Send all notes & evaluations) | |

PLEASE CIRCLE IF APPLICABLE: (include date of injury)
MVA / WORKMAN'S COMP:_____

COMMENTS: _Please review evaluation_

_____

FOR HPHC USE ONLY:

AUTHORIZATION #_____

APPROVAL DATES: FROM: _____ TO: _____

COMMENTS: _____

_____

_____

_____INITIALS: _____

7/12/99

**34**

DATE FAXED BACK TO NURSING HOME

AUG-14-2002 WED 04:09 PM HPHC 617 509 1372          FAX NO. 6175098982          P. 01

Harvard Pilgrim
Health Care

### HPHC AUTHORIZATION REQUEST
Commercial FAX # 1-(617)-509-1628
First Seniority only- FAX (617)-509-8982

ATTENTION: _Functional Therapies_

PATIENT NAME: _Sue  Bohlin_

PATIENT'S MEMBER ID#: _HPF 2180400_

REFERRING PHYSICIAN'S FULL NAME: _Dr. Robert Liberman_

PROVIDER NAME AND ID#: _Aberjona Nursing Center_

TELEPHONE: (781) _729-9370_          FAX: (781) _729-7923_

FIRST TREATMENT DATE: _March 1, 2003_

SPECIFIC DIAGNOSIS (Indicate right or left): _decrease functional activity_

SERVICES REQUESTED (Please check):

| | |
|---|---|
| Physical Therapy ___✓___ | Single Visit _____ (Include eval & treatment plan) |
| Occupational Therapy _____ | Initial Auth ___✓___ |
| Speech Therapy _____ (Must include evaluation) | FOCUSED REVIEW (Extension) _____ (Send all notes & evaluations) |
| | Benefit Exception (Extension) _____ (Send all notes & evaluations) |

PLEASE CIRCLE IF APPLICABLE: (include date of injury)
MVA / WORKMAN'S COMP: _____

COMMENTS: _Please review evaluation_

FOR HPHC USE ONLY:

AUTHORIZATION #: _PT 35147C_

APPROVAL DATES: FROM: _3/1/03_ TO: _4/1/03_

COMMENTS: _____(N+03X WK)___

If additional auth is needed, please send
CURRENT REASSESSMENT, including
measurable and objective data, as well as an
UPDATED MD script. Thank you.          INITIALS: _____

7/12/99

# SECTION 3 – GETTING THE CARE YOU NEED, INCLUDING SOME RULES YOU MUST FOLLOW

(First Seniority's service area, using plan providers to get your care, your Primary Care Provider, getting care from specialists, when you do and do *not* need a referral from your PCP, changing doctors, getting care when the doctor's office is closed, getting care when you are traveling or away from home)

## What is the geographic "service area" for First Seniority?

You can enroll in First Seniority and get covered services as long as you live in the plan's service area:

Acton, Amesbury, Andover, Arlington, Ashland, Avon, Ayer, Bedford, Bellingham, Belmont, Beverly, Billerica, Boston, Boxboro, Boxford, Braintree, Brookline, Burlington, Cambridge, Canton, Carlisle, Chelmsford, Chelsea, Cohasset, Concord, Danvers, Dedham, Dover, Dracut, Dunstable, Essex, Everett, Foxboro, Framingham, Franklin, Georgetown, Gloucester, Groton, Groveland, Hamilton, Hanscom AFB, Haverill, Holbrook, Holliston, Hopkinton, Hudson, Ipswich, Lawrence, Lexington, Lincoln, Littleton, Lowell, Lynn, Lynnfield, Malden, Manchester, Manchester-by-the-sea, Marblehead, Marlboro, Maynard, Medfield, Medford, Medway, Melrose, Merrimac, Methuen, Middleton, Millis, Milton, Nahant, Natick, Needham, Newbury, Newburyport, Newton, Norfolk, N. Andover, N. Reading, Norwood, Peabody, Pepperell, Plainville, Quincy, Randolph, Reading, Revere, Rockport, Rowley, Salem, Salisbury, Saugus, Sharon, Sherborn, Shirley, Somerville, Stoneham, Stoughton, Stow, Sudbury, Swampscott, Tewksbury, Topsfield, Townsend, Tyngsboro, Wakefield, Walpole, Waltham, Watertown, Waverley, Wayland, Wellesley, Wenham, Westford, Weston, W. Newbury, Westwood, Weymouth, Wilmington, Winchester, Winthrop, Woburn, Wrentham

## Using plan providers to get your care

As a Member of First Seniority, you will get most or all of your care from "plan providers."

"Providers" is the general term we use for doctors, hospitals, health care professionals, and health care facilities that are licensed and/or certified by Medicare and by the State to deliver or furnish health care services.

- We call them "<u>plan</u> providers" when they are part of First Seniority – that is, when we have contracted or arranged with them to coordinate or provide covered services or supplies to Members of First Seniority.

- We call them "<u>non</u>-plan providers" when they are not part of First Seniority.

Now that you are a Member of First Seniority, you will be getting your covered medical care and services from <u>plan</u> providers, with just a few exceptions that are described in this booklet. For a complete list of plan providers, please refer to the First Seniority Provider Directory. If you have any questions about the providers listed in the directory, please call Member Services at the telephone number on the cover of this booklet.

## Your PCP (Primary Care Provider) will coordinate all of your care

What is a "PCP" and how do you get one?

As a Member of First Seniority you will have a <u>PCP who coordinates all of your care.</u> "PCP" stands for <u>P</u>rimary <u>C</u>are <u>P</u>hysician. Your PCP is a health care professional who is trained to give you basic care. Your PCP is responsible for providing or coordinating covered services while you are a Member of First Seniority.

When choosing your PCP, be sure to select a Massachusetts based PCP, by using the Provider Directory or getting help from Member Services. You can reach Member Services at 1-800-421-3550 (Hours of operation are 8 a.m. - 7:30 p.m. on Monday and Wednesday, and 8 a.m. - 5:30 p.m. on Tuesday, Thursday and Friday). A Member Services representative will be happy to assist you. Hearing impaired Members can contact Member Services by calling the TTY Machine at 1-800-421-3599. When you select your PCP, it is important to remember that this will limit you to the hospital, outpatient facilities and panel of specialists in the provider network contracted with your PCP. To find out which plan hospital your PCP has admitting privileges to, check with Member Services.